WESTERN CLAY NATIONAL FARM LOAN ASSOCIATION
v. LILLY.

4-3596

Opinion delivered November 19, 1934.

*Guy V. Head, C. S. Hale, A. T. Welborn* and *A. P. Patton,* for appellant.

*Oliver & Oliver,* for appellee.

JOHNSON, C. J. In 1926 J. B. Lilly, now deceased, applied for and was granted a loan in the sum of $2,500 by the Federal Land Bank of St. Louis, Missouri. As a condition precedent to the granting of this loan, the borrower was required to purchase and pay for twenty-five shares of stock of the par value of $5 per share in appellant Western Clay National Farm Loan Association, and the association in turn was required to purchase a like amount of stock from the land bank. Subsequent to the granting of this loan, J. B. Lilly died, and thereafter on June 1, 1931, Mrs. J. B. Lilly, appellee here, and wife of the said J. B. Lilly, paid the loan in full to the Federal Land Bank of St. Louis. Upon payment of the loan the land bank canceled its stock issued upon this loan and gave the association credit on its contingent liabilities for the full value thereof. Thereafter, due demand was made upon the local association for the retirement of the shares of stock held by appellee which was refused by appellant, and this suit was instituted to compel retirement. Upon trial a judgment was rendered in favor of appellee and against appellant, and the cause is here on appeal.

Appellant is a corporation organized under the Federal Farm Loan Act, same being 12 USCA, c. 7, § 641, approved July 17, 1916. The Federal Land Bank of St. Louis is a corporation organized under said act, and is domiciled at the city of St. Louis in the State of Missouri, and as such serves the territory embraced in Arkansas, Illinois and Missouri making farm loans.

By § 7 of the act referred to, appellant is a separate and distinct corporation from the Federal Land Bank of St. Louis. Under the provisions of said act, appellant association is required to indorse all paper handled by the borrowers of such association and therefore has a contingent liability upon such indorsed paper. Section 4 of said act creates twelve Federal Land Bank districts and creates therein a Federal Land Bank for the purpose of making loans on farm lands situated in such districts. The act further provides that the original capital stock of each Federal Land Bank shall be divided into shares of the par value of $5 each.

The theory of the act is co-operative in purpose, spirit and effect. Upon approval of a loan by the local association, it issues stock to the borrower in the amount of 5 per cent. of the loan applied for, and the local association is thereupon required to purchase from the Federal Land Bank in the district capital stock therein to the amount of 5 per cent. of the loan granted by it. The borrower by the terms of the act is liable to the local association for an assessment against this stock to the extent of 100 per cent. thereof upon insolvency. In each instance the issued stock is held as collateral security to the loan.

No contention is made that the Federal Land Bank of St. Louis is liable to appellee for stock held by her in the local association; therefore this question and the cases bearing thereon have no application to the facts of this case.

Appellee does contend, however, that the local association which issued her stock is liable upon the retirement thereof for its par value, regardless of the solvency or insolvency of the local association.

The question here under consideration was determined by the Supreme Court of North Dakota in *Byrne* v. *Federal Land Bank, etc.*, 61 N. D. 265, 237 N. W. 797, and the logic and reasoning of the opinion are such as to warrant the following quotation therefrom:

"It is true the act says upon payment of his loan 'the national farm loan association shall pay off at par and retire the corresponding shares of its stock which

were issued when such land bank stock was issued.' The plaintiff, however, is a stockholder in a corporation. The corporation cannot pay off at par the stock held by the plaintiff if it be insolvent, or if it has no money. The pleadings and the stipulated facts admit the practical insolvency of the Farm Loan Association. The shareholders are 'individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares.' Section 9 of the act. Consequently it is possible for the plaintiff to be held for double liability.

"Plaintiff contends that the pleadings do not show the insolvency of the loan association at the time of the repayment of the loan; that is, at the time the land bank bid in the property for the full amount. It may be the answers are somewhat indefinite on this point; but it is shown the land bank applied the value of the stock held by the loan association on its debts to the bank, because of the inability of the association to pay them. Then, also, if the association was insolvent at the time of the commencement of the action and is still insolvent, it cannot be compelled to pay plaintiff the value of his stock when it is not yet known whether he may lose, not only the $500 which he has already paid, but in addition be required to pay an assessment of $500 or part thereof. While the statute requires the retiring of the shares at par, it contemplates a solvent institution. The plaintiff, by merely paying his loan, cannot escape the responsibility which he assumes as a stockholder. The relationship which he bears to the other shareholders and to the whole system is such that he cannot evade responsibility. When he applies for and receives a loan under the provisions of the act, he takes the loan according to the tenor of the law. The act makes provision for earnings and for dividends on his stock, and it provides also that in case the dividends are sufficient the directors of the loan association 'with approval of the Federal Farm Loan Board' (12 USCA, § 721) may in their discretion pay off at par, and retire the stock, even if the loan be not paid. The

payment of the loan does not relieve the borrower from his liability as a stockholder. The only assets which a Farm Loan Association has or can have are the shares which it takes in the Federal Land Bank to counterbalance the shares of stock in the association taken by the borrower, such dividends as the shares of stock in the land bank taken by the association may earn, and such 'reasonable initial charges to be made against applicants for loans and to borrowers in order to meet the necessary expenses of the association' as specified in subdivision 3 of § 11 of the act; but such charges can 'in no case exceed 1 per centum of the amount of the loan applied for.' It is true the association may acquire and dispose of property, real and personal, that may be necessary or convenient for the transaction of its business, and it may invest its earnings so as to have increased income; but this is the extent of its capital and assets. The statute contemplates that when the loan is paid the stock shall be canceled, and the necessary corollary of this is that the par value of the stock be returned; but it is evident from the statute that Congress had in mind the possibility that such Farm Loan Association may become insolvent.

"Section 29 of the act makes provision for the dissolution of a Farm Loan Association upon insolvency, and the appointment of a receiver. The power to declare an association insolvent and to appoint a receiver therefor is vested in the Federal Farm Loan Board. But 'no national farm loan association shall be declared insolvent by said board until the total amount of defaults of current interest and amortization installments on loans indorsed by national farm loan associations shall amount to at least $150,000 in the Federal Land Bank district, unless such association shall have been in default for a period of two years.' 12 USCA, § 961.

"It is true the pleadings do not allege that the Federal Farm Loan Board declared this association to be insolvent; but the facts alleged in the pleadings show that the status described by the act obtains, and it is therefore insolvent. Manifestly the association cannot be compelled to pay the plaintiff the value of his stock

when it has no assets out of which the stock can be paid. This association has no property, received no dividends, has no earnings, and there is no fund which the association can be compelled to distribute to its stockholders. The only source from which it could pay is this stock in the Federal Land Bank. The pleadings show this had been pledged and was held by the land bank as collateral. The plaintiff proceeds on the theory that, as soon as the loan is repaid, the Farm Loan Association must 'pay off at par and retire' the shares of stock in the association issued to him. The last paragraph of § 7 of the act (12 USCA, § 721) describes the procedure for subscription of stock in the Federal Land Bank and requires the association to subscribe for capital stock when it applies for a loan to a borrower. After making provision for this capital stock to be held as collateral to the loan, it says: 'Such stock (that is the stock in the land bank taken by the loan association) may, in the discretion of the directors (that is the directors of the land bank), and with the approval of the Federal Farm Loan Board, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued.' But this is only a portion of the act. When we consider the act as a whole, it is apparent Congress did not intend the Farm Loan Association to pay off the stock at par when it had nothing with which to pay the stock.

"The plaintiff is a stockholder in a corporation. He has rights therein, but he has also corresponding duties and liabilities. As shown heretofore, he is individually responsible equally and ratably for the debts of the corporation in which he is a stockholder. Section 9 of the act. This provision for double liability is similar to the one regarding liability of stockholders in banking corporations, both State and National. His responsibility to his corporation is the same.

"As we have already pointed out, the principle involved in the act is co-operative in nature. It is only through the co-operation of his neighbors, with their

assistance, upon their recommendation and the pledge of their liabilities he can secure his loan. They pledge their faith and credit to aid him, and he pledges his faith and credit to aid them. Having secured their co-operation and assistance and finding his loan paid, he now wants to avoid his responsibilities to those who made it possible for him to get his loan. His rights are not superior to the rights of any stockholder in the corporation.''

Appellee tacitly admits that the opinion just quoted reached the correct conclusion of no liability against the local association under the facts and law there discussed and decided, but contends that the opinion overlooked or ignored the amendatory act of 1923 as follows:

''Upon liquidation of any national farm loan association, the stock in the Federal Land Bank held by such association shall be canceled and the Federal Land Bank shall thereupon issue to the borrowers through such association an amount of stock in the Federal Land Bank equal to the amount of stock held by such borrowers in the liquidated association, such stock to be held by the bank as collateral to the loans of such borrowers and to be paid off and retired at par in the same manner as stock held by borrowers in farm loan associations, and the Federal Land Bank shall pay to the borrowers holding such stock the same dividends as are paid to national farm loan associations by such bank. The personal liability of the stockholders in such liquidated association to the association shall survive such liquidation and shall be vested in the bank in that district, which may enforce the same as fully as the association could if in existence.'' Section 966, USCA, chapter 7. Section 29 of the original act so amended provides:

''If any national farm loan association shall be declared insolvent and a receiver shall be appointed therefor by the Farm Credit Administration, the stock held by it in the Federal Land Bank of its district shall be canceled without impairment of its liability, and all payments on such stock, with accrued dividends, if any, since the date of the last dividend shall be first applied

to all debts of the insolvent farm loan association to the Federal Land Bank, and the balance, if any, shall be paid to the receiver of said farm loan association: *Provided,* that in estimating said debts contingent liabilities incurred by national farm loan associations under the provisions of this chapter on account of default of principal or interest of indorsed mortgages shall be estimated and included as a debt, and said contingent liabilities shall be determined by agreement between the receiver and the Federal Land Bank of the district, subject to the approval of the Farm Credit Administration, and if said receiver and said land bank can not agree, then by the decision of the Farm Bank Commissioner, and the amount thus ascertained shall be deducted in accordance with the provisions of this section from the amount otherwise due said national farm loan association for said canceled stock. Whenever the capital stock of a Federal Land Bank shall be reduced, the board of directors shall cause to be executed a certificate to the Farm Credit Administration, showing such reduction of capital stock, and, if said reduction shall be due to the insolvency of a national farm loan association, the amount repaid to such association.'' 12 USCA, c. 7, § 964.

The amendatory act just quoted amends § 29 of the original act of 1916 in the particular that, upon liquidation of a local association, it is the duty of a land bank in that district to cancel out all stock in the possession of the local association and re-issue same to the individual borrowers of such local associations and subsequent thereto all dealings in reference to such stock shall be had and done between the Federal Land Bank and the borrower. No contention is made that the association stock here in controversy was ever reissued by the Federal Land Bank of St. Louis as is provided for in the amendment, but it is contended that the amendment of 1933 demonstrates the legislative policy of such institutions with and towards the borrowers therein, and that the amendment evinces a clear legislative intent that the borrower's stock, whether it be issued by the local association or by the Federal Land Bank of such district, shall be retired upon payment of the loan of

such borrower, regardless of the solvency or insolvency of the local association. We can not agree with this contention. We are convinced that the amendment of 1923 has application to solvent local associations only which are in process of voluntary liquidation. Any other construction of the amendment nullifies and destroys the clear intent and purposes of the original act, and would nullify and destroy the whole theory of co-operation by the borrowers which is significantly demonstrated by all provisions of the original act. If a borrower be permitted to pay off his loan and withdraw his capital stock at par value in an insolvent association, there is no co-operation left.

Manifestly co-operation is the groundwork of the original act. Ten borrowers are required to co-operate in the formation of a local association, and each borrower is required to purchase capital stock in the local association to the approximate amount of 5 per cent. of his loan. This stock is never surrendered to the borrower, but is held by the local association as collateral security to the borrower's loan. In other words, each borrower in a local association, to the extent of his stock plus an individual liability upon insolvency of a 100 per cent. assessment on such stock, is surety for the loans of all other members and borrowers in such local association, and this liability continues until the loan is paid off and retired during the solvency of such local association.

The co-operative feature of the original act also extends and applies to the Federal Land Banks, but it is not deemed necessary to go into this phase of the situation. It suffices to say that the destruction of the co-operative features of the original act would nullify and destroy the clear and unmistakable intent of the Congress as exemplified in the act, and we are unwilling to give the 1923 amendment such construction and interpretation.

The conclusion thus reached leaves only the question of whether or not the local association was solvent on June 1, 1931, when appellee retired her loan. On August 23, 1930, appellant and the Federal Land Bank of St. Louis, its principal creditor, made and entered into

a written contract or agreement, to the effect "that, whereas defaults have accrued, etc. * * * and whereas the association desires to reimburse the bank for the actual loss, etc." This contract defines the respective rights and liabilities of the local association and the Federal Land Bank which are dealt with in minute detail, but we deem it sufficient to say that the parties to this contract definitely determined the insolvency of the local association on the date of its execution and arranged the date for final reckoning of the aggregate of the liability by the local association to the Federal Land Bank on January 1, 1935. Moreover, the agreed statement of facts upon which this cause was submitted and decided provides:

"That, at the time said loan was paid off, on June 1, 1931, the total outstanding capital stock of the Western Clay National Farm Loan Association was two thousand fifty-seven shares (2,057) of a par value of $10,285, including the twenty-five (25) shares of said capital stock issued to John B. Lilly.

That from time to time, prior to June 1, 1931, defaults had occurred under the terms and conditions of the aforesaid indorsed first mortgages taken by the Federal Land Bank of St. Louis from the members of said association and pursuant to the terms and provisions of § 25 of said Federal Farm Loan Act, said association had been notified of said defaults and had been called upon by said bank to make good each of said defaults either by the payment of the amount unpaid thereon in cash or by the substitution of an equal amount of Federal farm loan bonds with all unmatured coupons attached. Notwithstanding its liability as indorser as aforesaid, said association has failed, and still fails, to make good such defaults and was indebted on June 1, 1931, and still is so indebted by reason thereof; and that said association had been in default in the payment of its said obligations for more than two years prior to June 1, 1931, and still so in default."

Section 921, USCA, c. 7, provides in reference to defaults:

"If there shall be default under the terms of any indorsed first mortgage held by a Federal Land Bank under the provisions of this chapter, the National Farm Loan Association through which said mortgage was received by said Federal Land Bank shall be notified of said default. Said association may thereupon be required, within thirty days after such notice, to make good such default, either by the payment of the amount unpaid thereon in cash or by the substitution of an equal amount of Federal farm loan bonds, with all unmatured coupons attached."

Clearly, it appears that on June 1, 1931, when appellee retired her loan in the Federal Land Bank of St. Louis, the Western Clay National Farm Loan Association had defaulted in its obligations to the Federal Land Bank and had been in such default for more than two years prior thereto. This was a state of insolvency on the part of the local association, and the mere fact that no receivership was procured thereon in no wise alters the situation under consideration. We know of no rule of law, and have been cited none by counsel, which permits a stockholder in an insolvent corporation to withdraw his capital investment at par. True, if the amendment of 1923 had the purpose and effect contended for by appellee this would be the result, but, as has been shown, the amendment produced no such result.

Since we have concluded that the Western Clay National Farm Loan Association was insolvent in 1930 and was insolvent on June 1, 1931, when the loan was retired, appellee has no lawful right to maintain this suit as a stockholder against the local association.

The conclusion reached renders it unnecessary to consider or decide other questions argued orally and in briefs.

For the reasons stated, the judgment is reversed, and the cause of action dismissed.