## KNOX NATIONAL FARM LOAN ASSN. ET AL. *v.* PHILLIPS.

No. 389.   Argued January 14, 15, 1937.—Decided February 1, 1937.

*Mr. Peyton R. Evans,* with whom *Messrs. Roger D. Branigin, Gerald E. Lyons,* and *John M. Rankin,* and *Miss May T. Bigelow* were on the brief, for petitioners.

*Mr. William E. Richardson,* with whom *Mr. Harvey B. Cox* was on the brief, for respondent.

MR. JUSTICE CARDOZO delivered the opinion of the Court.

The controversy in this case makes it necessary to determine the remedies available to a shareholder in an insolvent farm loan association upon the refusal of a demand for the retirement of his shares.

Respondent is the owner of a farm in Knox County, Ohio. His vendors were members of the Knox National Farm Loan Association, a coöperative membership corporation chartered under federal law. Federal Farm Loan Act, July 7, 1916, c. 245, § 7, 39 Stat. 365; 12 U. S. C. § 711. Through that association they procured a loan from the Federal Land Bank of Louisville, giving a mortgage as security. Part of the proceeds of the loan (i. e., 5% thereof) they used for the purchase of stock in the coöperative association, there being a requirement of the statute that "any person desiring to borrow on farm land mortgage through a national farm loan association shall make application for membership and shall subscribe for shares of stock in such farm loan association to an amount equal to 5 per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan." Federal Farm Loan Act, § 8; 12 U. S. C. § 733; cf. § 9; 12 U. S. C. 745. The statutory plan has already been expounded in opinions of this court. *Smith* v. *Kansas City Title & Trust Co.,* 255 U. S. 180, 203; *Federal Land Bank* v. *Gaines,* 290 U. S. 247; *Federal Land Bank* v. *Priddy,* 295 U. S. 229.

Upon the purchase of the farm by respondent in October, 1927, he assumed the payment of the mortgage debt, succeeding at the same time to the interests of his vendors in the stock of the association and to the attendant liabilities. The shares were of the par value of $265. They had been pledged with the association, in accordance with the requirements of the statute (§ 8; 12 U. S. C. § 733) as security for the loan. The association on its part had subscribed for an equal amount of the shares of the federal land bank, the lender of the

money, leaving the shares so subscribed for as a pledge for the security of the lender. This too was a procedure called for by the statute. Section 7; 12 U. S. C. § 721. From time to time thereafter there were payments on account with the result that the loan had been reduced by March, 1933, to $2122.46, at which time respondent made an effort to clear the farm of the mortgage and to put an end also to his liability as shareholder. To that end he paid the association $1857.46 to be transmitted to the bank, insisting that the deficiency ($265) be satisfied through the retirement of the shares. The bank accepted the payment as one upon account, but refused to discharge the mortgage without payment of the balance. At that time, by concession, the association was insolvent. Its capital was impaired; it was indebted to the bank upon other mortgage loans, being liable as endorser or otherwise when it borrows for a member (*Federal Land Bank* v. *Gaines, supra*); it had no moneys in its treasury wherewith the shares could be retired.

The courts took up the controversy. Respondent joined the bank and the association as defendants in a suit in the Court of Common Pleas of Knox County, Ohio. He prayed for judgment against the bank that the mortgage be held to have been cancelled and extinguished and for judgment against the association that the shares of stock be paid off and retired, and that the business of the association be wound up and liquidated. For answer, the bank and the association took the ground that the partial payment made was insufficient to discharge the mortgage; that there could be no retirement of the shares while the association was insolvent; that the state court was without jurisdiction to liquidate the business of the association, an instrumentality of the federal government, and that jurisdiction in that behalf resided in the federal government exclusively.

Two decrees were rendered by the Court of Common Pleas. The first, filed October 7, 1935, provides that the

mortgage lien shall be canceled by the bank upon tender by the plaintiff of $265 in addition to the payment previously made, the tender to be kept good by payment into court. The second, filed November 18, 1935, directs the farm loan association to retire the respondent's shares, and gives him judgment against the association for the par value thereof. It appearing that the association was unable to pay the judgment by reason of insolvency, a receiver was appointed to take possession of the assets and liquidate the business, the association and its officers being required forthwith, upon the demand of the receiver, to surrender any property in their possession or under their control. From the decree of November 18, the defendants prosecuted an appeal to the Ohio Court of Appeals, which affirmed with an opinion. A petition for review by the Supreme Court of the state was submitted and denied. We granted certiorari to set at rest far-reaching questions as to the meaning and administration of an important Act of Congress.

At the outset a doubt as to our jurisdiction calls for scrutiny and judgment. The case being here after a decision of a state court, jurisdiction is not given us unless the decree to be reviewed is final. Judicial Code, § 237; 28 U. S. C. § 344. Respondent has been adjudged entitled to the payment of a specific sum of money, but he is also to have a receiver who is to liquidate a business, the court reserving the right to control the conduct of its officer and to rescind or modify its order. Does the appointment of a receiver postpone the stage of finality until his work is at an end?

The primary purpose of the suit was the recovery of a judgment for the par value of the shares. Any other relief prayed for or awarded was tributary to that recovery; it was a form of equitable execution to make collection possible. When the amount invested in the stock was adjudged to constitute a debt, whatever followed in

the decree was auxiliary and modal. The Association and its officers were not directed to account, and to surrender what was found owing at the close of the accounting. They were directed to make delivery and to make delivery at once. We think they were subjected to a present obligation as immediate and absolute as if the assets were to be wrested from them by execution directed to the sheriff. *Winthrop Iron Co.* v. *Meeker,* 109 U. S. 180, 183; *St. Louis, I. M. & S. R. Co.* v. *Southern Express Co.,* 108 U. S. 24, 28, 29; *Thomson* v. *Dean,* 7 Wall. 342; *McGourkey* v. *Toledo & Ohio Central Ry. Co.,* 146 U. S. 536; *Collins* v. *Miller,* 252 U. S. 364, 371; *Chase* v. *Driver,* 92 Fed. 780, 785; *Des Moines* v. *Des Moines Water Co.,* 230 Fed. 570, 573; *Victor Talking Machine Co.* v. *George,* 69 F. (2d) 871, 879.

Accepting jurisdiction, we are brought to a consideration of the merits.

A national farm loan association is a coöperative enterprise. Its members must subscribe for its shares to the extent of five per cent of the loan to be procured in their behalf. Federal Farm Loan Act, § 8; 12 U. S. C. § 733. The association in its turn, upon the procurement of the loan, subscribes to stock of the land bank to an equivalent extent. Section 7; 12 U. S. C. § 721. With few exceptions, the only assets which a farm loan association has or can have are the shares which it takes in the federal land bank to counterbalance the shares of its own stock taken by the borrower, together with dividends distributed by the bank, and reasonable charges for necessary expenses, not in excess of "1 per centum of the amount of the loan applied for." *Byrne* v. *Federal Land Bank,* 61 N. D. 265, 277; 237 N. W. 797; cf. § 11; 12 U. S. C. 761, subd. 3. To add to the protection of the bank and other creditors, the shareholders in the association are chargeable under the law as it stood at the date of these transactions with personal liability up to a designated maximum. "Shareholders of every national farm-loan association shall be held individually

responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements of such association to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." Section 9; 12 U. S. C. § 744.[1] Upon evidence that an association has failed to meet its obligations the Farm Credit Administration may declare it insolvent and appoint a receiver, subject to the proviso that this shall not be done until the total defaults shall amount to at least $150,000 in the federal land bank district, unless such association shall have been in default for a period of two years. Section 29; 12 U. S. C. § 961. There shall be no voluntary liquidation without the consent of the supervising federal authority. Section 29; 12 U. S. C. § 965.

The background has now been indicated against which we must view the question whether a member of an association who has paid his loan in full may have his shares retired and recover their par value when the association is insolvent. In support of such a recovery respondent relies upon two sections of the statute. By § 7 (12 U. S. C. § 721) an association borrowing from a land bank "shall subscribe for capital stock of said land bank to the amount of 5 per centum of such loan," the stock to be held by the bank as collateral security. By the same section, such stock [i. e., the stock of the land bank] shall be "paid off and retired upon full payment of the mortgage loan." If that is done, "the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued."[2]

---

[1] The liability has been changed in respect of contracts, debts or engagements entered into after June 16, 1933, without affecting liabilities incurred before that time. Act of June 16, 1933, c. 98, § 72, 48 Stat. 271; 12 U. S. C. § 744 a.

[2] The following is the text of the section as embodied in § 721 of the United States Code: "Whenever any national farm loan association shall desire to secure for any member a loan on first mortgage

Complementary to that section is § 8 of the Act (12 U. S. C. § 733), which regulates the relation between the association and its members. Upon applying for a loan, the applicant "shall subscribe for shares of stock in such farm loan association to an amount equal to 5 per centum of the face of the desired loan," the subscription at his election to be paid out of the proceeds, and the stock to be held by the association as collateral security. "Said capital stock shall be paid off at par and retired upon full payment of said loan." *Ibid.*

These provisions for retirement, despite their apparent breadth, are not to be extended to a situation such as the one before us here, and this for two reasons.

In the first place, § 8 of the statute, as already pointed out, is complementary to § 7. We are to read the two together. The association is not to retire its own shares and repay to the subscriber the amount of his subscription until the land bank has retired the corresponding shares of bank stock subscribed for by the association, and has paid back to the association the par value thereof. Only thus can the association be put in funds wherewith to make payment to its own subscribers. The record makes it plain, however, that this indispensable condition has never been fulfilled. The bank refuses to retire the

from the Federal land bank of its district it shall subscribe for capital stock of said land bank to the amount of 5 per centum of such loan, such subscription to be paid in cash upon the granting of the loan by said land bank. Such capital stock shall be held by said land bank as collateral security for the payment of said loan, but said association shall be paid any dividends accruing and payable on said capital stock while it is outstanding. Such stock may, in the discretion of the directors, and with the approval of the Farm Credit Administration, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued." (12 U. S. C. § 721.)

shares of bank stock subscribed for by the association upon the loan to the respondent, or to refund the subscriptions wholly or in part. The scheme of the statute would be fatally disrupted if the association could be held when the bank refused to pay.

In the second place, neither the bank nor the association is under a duty to retire stock when the association is insolvent, and thus to give to the withdrawing member through the return of his subscription a preference over others. The statute is misread if the sentences regulating withdrawal are taken out of the setting of a coöperative scheme and viewed in isolation. Under the law as it stood when respondent became a member, the shareholders were subjected to a personal liability for all the contracts, debts, and engagements of the association "to the extent of the amount of stock owned by them at the par value thereof, in addition to the amount paid in and represented by their shares." § 9; 12 U. S. C. 744. The association is already in default in the payment of its mortgage debts, and already its capital is impaired. In such circumstances, to return to respondent the amount paid in and represented by his shares would frustrate the statutory mandate that the amount so paid in shall constitute a fund for the benefit of creditors to be supplemented in case of need by personal liability for as much more as the investment. Indeed, altogether apart from any pledge of personal liability, the whole structure of the association is built upon the implication of equal rights and duties on the part of the coöperating members. To permit a member to withdraw when the association is insolvent would be to cast upon his fellow members the responsibility for defaults for which all should answer ratably in proportion to their interests. To guard against that inequity the statute makes it clear that shares in the association shall not be subject to retirement until the corresponding subscriptions to the land bank have been

202

canceled and refunded. We are not required to determine whether a member of an association will have rights enforcible against the bank when the association has been wound up in accordance with the federal statute. Cf. § 29; 12 U. S. C. § 966. No such question is before us. Enough for present purposes that in the existing situation, with insolvency conceded, the shares of the association are not subject to withdrawal.

The conclusion thus arrived at is in accord with well considered opinions in North Dakota and Arkansas where the same question was involved. *Byrne* v. *Federal Land Bank, supra; Western Clay National Farm Loan Assn.* v. *Lilly,* 189 Ark. 1004; 76 S. W. (2d) 55. It has the support of persuasive analogies in the law of building and loan associations, which have much in common with farm loan associations incorporated by act of Congress. The settled rule is that the shares of building and loan associations are not subject to retirement when the association is insolvent, and that any refund made at such a time may be reclaimed by a receiver. *Towle* v. *American Bldg., L. & I. Society,* 61 Fed. 446; *Sullivan* v. *Stucky,* 86 Fed. 491, 493; *Coltrane* v. *Blake,* 113 Fed. 785; *Aldrich* v. *Gray,* 147 Fed. 453, 456; *Christian's Appeal,* 102 Pa. 184; *Colin* v. *Wellford,* 102 Va. 581; 46 S. E. 780; cf. *Fidelity Savings & Loan Assn.* v. *Burnet,* 62 App. D. C. 131; 65 F. (2d) 477, 479, 481.

In holding that a judgment for the par value of the shares is inconsistent with the federal statute and impliedly forbidden, we cut the ground away from the auxiliary receivership, which must fall with the judgment it was intended to enforce. To this we add, however, that a national farm loan association is an instrumentality of the federal government; that the time and manner of liquidation are governed by the federal statute; and that jurisdiction does not reside in the tribunals of a state to wind up the business of this governmental agency

either by a receivership or otherwise. 12 U. S. C. §§ 931, 961; *Federal Land Bank* v. *Priddy, supra,* pp. 231, 234; *Cook County National Bank* v. *United States,* 107 U. S. 445, 448; *Easton* v. *Iowa,* 188 U. S. 220, 233; *Jennings* v. *U. S. F. & G. Co.,* 294 U. S. 216, 226; *Brusselback* v. *Chicago Joint Stock Land Bank,* 69 F. (2d) 598; *Partridge* v. *St. Louis Joint Stock Land Bank,* 76 F. (2d) 237; *Boyd* v. *Schneider,* 131 Fed. 223, 227.

Whether the respondent may vote upon his stock, after his mortgage has been paid in full, until the shares have been redeemed, and whether he has a remedy to compel the Farm Credit Administration to liquidate the business promptly, are questions that have been considered in the briefs, but that do not call for answer upon the record now before us.

The decree should be reversed and the cause remanded to the Court of Appeals of the State of Ohio for further proceedings not inconsistent with this opinion.

*Reversed.*