**COGGESHALL v. UNITED STATES et al.**

No. 4268.

Circuit Court of Appeals, Fourth Circuit.

April 5, 1938.

---

Henry E. Davis, of Florence, S. C., for appellant.

Lawrence S. Apsey, Sp. Atty., Department of Justice, of Washington, D. C., and J. Ivey Humphrey, Asst. Atty. Gen., of South Carolina (Claud N. Sapp, U. S. Atty., of Columbia, S. C., Louis M. Shimel, Asst. U. S. Atty., of Charlotte, S. C., C. W. Leaphart, Atty., Department of Justice, of Washington, D. C., John M. Daniel, Atty. Gen., M. J. Hough, Asst. Atty. Gen. of South Carolina, and Norval N. Newell, Co. Atty., of Moncks Corner, S. C., on the brief), for appellees.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

NORTHCOTT, Circuit Judge.

The appellant, J. R. Coggeshall, and others, on June 5, 1934, executed and delivered to the United States of America, an option to purchase a tract of land in Berkeley county, South Carolina, estimated in the option as containing 3,626 acres, at a price of $4 per acre. On June 22, 1934, the National Forest Reservation Commission approved the purchase, and on the same date the vendors were notified by the proper authorities of the government's election to purchase the land according to the terms of the option.

The option contained the following provisions: "That in case the vendors are unable to show and establish title to the above-described lands satisfactory to the Attorney General of the United States, as provided by law (36 Stat. 961 [16 U. S.C.A. § 517]), then and in that event the United States will, if it deems advisable, institute proceedings for the condemnation of said lands."

The title to the lands was not satisfactory and on January 26, 1935, appellant was notified that a suit to condemn the land would shortly be filed. This was done in July, 1935. An answer was filed in the condemnation proceeding by the appellant. Appellees, R. D. Guilds, as treasurer of Berkeley county, South Carolina, and C. P. Ballentine, as sheriff of said county, also filed answers setting up a claim for taxes due on the lands sought to be taken.

On January 30, 1936, the matter came on for trial in the District Court of the United States for the Eastern District of South Carolina, at Charleston, when evidence was taken and the jury made an award in the sum of $14,472.80, for the said tract of land, found to contain 3,618.2 acres.

On February 7, 1936, the court entered an order adjudging that upon payment, by the United States into the registry of the court, of the sum awarded by the verdict the title to the tract of land here in question should be vested in the United States. This order provided that: "This cause is held open for such other and further Orders, Decrees, and Judgments as may be necessary in the premises." Appellant Coggeshall in the meantime had become the only party at interest in the fund. The term of court at which the order of February 7, 1936, was entered ended in May, 1936.

On October 6, 1936, appellant, Coggeshall, filed a petition asking that the entire transaction as to the sale of the land owned by him be rescinded and that all orders passed in the condemnation suit be revoked. On the filing of this petition, the court issued a rule returnable October 26, 1936, by which the United States was required to show cause why the prayer of the petition should not be granted. The hearing on this rule having been postponed, the petitioner was permitted by the court to file an amended petition which embraced all of the matters contained in the first petition in the cause and in addition certain new matters. This amended petition was filed February 10, 1937, and alleged among other things that the United States had been guilty of inexcusable delay and laches in failing to carry the condemnation through promptly and in failing to pay appellant the sum of money fixed in the order of February 7, 1936. The amended petition further charged that the proceeding by which the United States sought to acquire title to the lands in question was not in fact a condemnation proceeding but was in the nature of a suit for specific performance; that the statutes under which the United States was proceeding to acquire the land were unconstitutional; that the United States had no lawful right to acquire them and that the lands were not subject to taxation after the option to purchase was accepted by the United States.

A rule was issued returnable February 18, 1937, requiring the United States to show cause why the prayer of the appellant's petition should not be granted. This hearing was postponed until March 2, 1937, and on March 1, 1937, the United States filed its answer to the rule denying the allegations of the petition and setting up the fact that the amount of the award for appellant's land had been deposited in the registry of the court on December 23, 1936.

A hearing was had on March 2, 1937, at which the tax officers of Berkeley County appeared as did also the State of South Carolina, through its Attorney General's office, asserting the validity of the tax liens against the land up to the time the United States paid in the money awarded, and took over the title.

On June 1, 1937, the court entered an order holding that the United States had the right to acquire the land in question and that the fund in the hands of the court was subject to all taxes up to the date the title vested in the United States. The court in the order denied the prayer of appellant's petition and dismissed the rule to show cause. From this order this appeal was brought.

The only question presented on this appeal is whether the judge below was in error in refusing to grant the prayer of the petition to set aside the order of February 7, 1936, vesting the title to the lands in question in the United States upon the payment of the amount fixed by the verdict of the jury.

The term of court at which the order was passed had ended before the petition to revoke the order was filed. The appellant is shown to have had full and complete knowledge of all the proceedings in the condemnation suit and made no objection to any of the steps taken and filed no exceptions to the action of the court in entering the order. It is strongly contended on behalf of the United States that the order was final and that the court had no power to set it aside or modify it after the adjournment of the term at which it was entered. In support of this contention the case of Knox National Farm Loan Association v. Phillips, 300 U.S. 194, 57 S.Ct. 418, 420, 81 L.Ed. 599, 108 A.L.R. 738, is relied on. In that case Mr. Justice Cardozo said:

"Respondent has been adjudged entitled to the payment of a specific sum of money, but he is also to have a receiver who is to liquidate a business, the court reserving the right to control the conduct of its officer and to rescind or modify its order. Does the appointment of a receiver postpone the stage of finality until his work is at an end?

"The primary purpose of the suit was the recovery of a judgment for the par value of the shares. Any other relief prayed for or awarded was tributary to that recovery. * * * When the amount invested in the stock was adjudged to constitute a debt, whatever followed in the decree was auxiliary and modal."

It is undoubtedly true that the order finally settled and adjudicated the main issue involved in the condemnation suit and only details were left to be further dealt with. A discussion of the principle controlling such a situation will be found in the case of the City of Des Moines v. Des Moines Water Company, 8 Cir.,

230 F. 570, 573, where the court said: "A leading case in this court is Chase v. Driver, 92 F. 780, 34 C.C.A. 668. Judge Sanborn, speaking for the court in that case, after a very careful and analytical review of all the opinions of the Supreme Court on that subject, declared the rule to be that, a decree which orders a judicial sale, or takes the property from one person, and orders it to be delivered to another, is final, although the case is referred to a master to state an account."

See, also, St. Louis, I. M. & S. R. Co. v. Southern Express Co., 108 U.S. 24, 2 S.Ct. 6, 27 L.Ed. 638; McGourkey v. Toledo & Ohio Central Ry. Co., 146 U.S. 536, 13 S.Ct. 170, 36 L.Ed. 1079; Collins v. Miller, 252 U.S. 364, 40 S.Ct. 347, 64 L.Ed. 616.

It is contended on behalf of the appellant that the order was not final and that any question could be raised at the hearing on the petition to set the order aside that could have been raised at the trial of the condemnation suit, including the question of the constitutionality of the statutes under which the suit was brought.

It is not necessary to decide the question whether the order was final and could not be set aside after the adjournment of the term at which it was entered, for the reason that it is settled beyond controversy that if the court did have the power to set the order aside, it was a matter addressed to the sound discretion of the court. As we said in the case of Weekley v. Thomas, 4 Cir., 63 F.2d 988, 989: "It has long been settled in federal practice, that the refusal to set aside a verdict is a matter within the discretion of the trial judge, and that the overruling of a motion for a new trial is not the subject of exception."

See, also, Fishburn v. Chicago, Milwaukee & St. Paul Ry Co., 137 U.S. 60, 11 S.Ct. 8, 34 L.Ed. 585; City of Des Moines v. Des Moines Water Company, supra; First National Bank of Gate City, Virginia, v. Deisher, 4 Cir., 80 F.2d 882.

On the point raised by the appellant that the government had no constitutional right to take the lands in question because the protection of no navigable stream was involved, we do not think this contention can be sustained. No evidence was taken on this question and it is clear that having established the Wambaw National Forest, now the Francis Marion National Forest, which the land in question adjoined, if it was deemed necessary, for the protection and use of the large boundary already properly acquired by the government, to acquire appellant's land the government had the right to do so. Courts will not inquire into the question of the necessity of the use of the lands as this is purely a matter of legislative discretion delegated to the Secretary of Agriculture. Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135. The taking was for a public use and can be exercised by condemnation proceedings. United States v. Threlkeld, 10 Cir., 72 F.2d 464, certiorari denied 293 U.S. 620, 55 S.Ct. 215, 79 L.Ed. 708.

As to all other questions raised in appellant's petition concerning unwarranted delay and dilatoriness on the part of the government prior to the bringing of the condemnation suit, the appellant is clearly estopped from raising them after having agreed in the option that in the event the title was not satisfactory to the Attorney General, condemnation proceedings should be instituted, and after having filed an answer in the suit and having acquiesced in all the proceedings leading up to the entry of the order of February 7, 1936. The appellant made no objection to the entry of the order and took no exception to anything done in the suit.

We now come to a consideration of the charge in appellant's petition that the United States was guilty of inexcusable delay and dilatoriness in paying the money into the registry of the court as provided in the order and that he was greatly damaged thereby and the prayer that the order be set aside for that reason.

The order was entered on February 7, 1936, and the money was paid by the United States on December 23, 1936. Under the circumstances shown in the record we are of the opinion that while the government did not act with any great degree of diligence the delay was not such as to compel the judge below, in the exercise of his discretion, to set aside the order. The statutory safeguards that have wisely been thrown around the expenditure of public funds are such as cause unavoidable delay in the making of such disbursements. As was said by the Supreme Court in United States v. Kirkpatrick, 9 Wheat. 720, 735, 6 L.Ed. 199: "The general principle is, that laches is not imputable to

990

the government; and this maxim is founded, not in the notion of extraordinary prerogative, but upon a great public policy. The government can transact its business only though its agents; and its fiscal operations are so various, and its agencies so numerous and scattered, that the utmost vigilance would not save the public from the most serious losses, if the doctrine of laches can be applied to its transactions."

The appellant took no steps to ask the court below to expedite the payment of the award until October 6, 1936, and the payment was made before the amended petition was filed.

We are of the opinion that the court below was right in holding that the taxes due the county of Berkeley up to the time the title was vested in the United States were a lien on the fund in the hands of the court.

The appellant acquiesced in all that was done up to the time of the filing of his petition on October 6, 1936, and took no exception to any action of· the court below. He asked for no findings of fact or conclusions of law other than those given in the final order of the court dismissing the petition. The question of granting the appellant the relief prayed for was, in any view of the case, a matter within the discretion of the trial judge and there is nothing in the record that would justify us in holding that the discretion was abused.

Affirmed.