## STATE BOARD OF HEALTH et al. v. WILSON et al.

### No. 9514.

Court of Civil Appeals of Texas. Austin.

July 11, 1945.

Rehearing Denied July 28, 1945.

Grover Sellers, Atty. Gen., and David Wuntch and Geo. W. Barcus, Asst. Attys. Gen., for appellant.

Amos Felts, of Austin, for appellee.

Earl Street, Regional Atty., of Dallas, and Douglas B. Maggs, Kenneth Meiklejohn, and Herbert N. Shenkin, all of Washington, D. C., for United States Dept. of Labor, amicus curiæ.

BLAIR, Justice.

This litigation arose as follows:

The Congress of the United States passed Chapter 302, Public Laws 373, 58 Stat. 549 et seq., entitled "Labor-Federal Security Appropriation Act 1945," and which under "Title 1, Department of Labor-Sub-title Children's Bureau" appropriated $42,800,-000 for emergency maternity and infant care of wives and infants of certain enlisted men and aviation cadets in the Armed Forces of the United States. The Act made the funds available as follows: "* * * under allotments by the Secretary of Labor and plans developed and administered by State health agencies and approved by the Chief of the Children's Bureau * * * of which not more than 2½ per centum may be allotted to the States for administrative expenses from the date of this Act on the basis of need as determined by the Chief of the Children's Bureau."

The Act further provides: "That no part of any appropriation contained in this title shall be used to promulgate or carry out any instruction, order, or regulation relating to the care of obstetrical cases which discriminates between persons licensed under State law to practice obstetrics: Provided further, That the foregoing proviso shall not be so construed as to prevent any patient from having the services of any practitioner of her own choice, paid for out of this fund, so long as State laws are complied with."

Circular No. 1 of the Children's Bureau instructed state health agencies, charged with the duty of developing plans to carry out the purposes of the Act, as follows:

"A. For Obstetric Services. Qualifications required of practitioners performing

obstetric service under the program shall be established by each state health agency.

"B. For medical services other than obstetrics.

"Graduates of medical schools approved (at time of graduation or subsequent to graduation) by the Council on Medical Education and Hospitals of the American Medical Association. * * *"

"C. For pediatric services to new-born infants referred by obstetricians.

"Diplomates of the American Board of Pediatrics or physicians who have completed at least one year of graduate training in a pediatric residency approved by the Council of Medical Education and Hospitals of the American Medical Association."

Accordingly the plans adopted by the Texas State Health Department and approved by the Children's Bureau provide:

"Payment for obstetrical care will be authorized to any physician licensed in the State to practice obstetrics.

"Payment for medical care other than obstetrical care will be authorized only to physicians licensed in the state to practice medicine, and who are graduates of a medical school approved at the time of graduation or subsequent to graduation by the Council of Education and Hospitals of the American Medical Association."

Shortly after the foregoing plans were adopted and approved several Osteopathic physicians and surgeons of Texas complained to the State Health Board that the plans so developed and approved had the effect of excluding from participation in the treatment of the infants provided for by the Act, all licensed physicians and surgeons in Texas, including complainants, except those who are "graduates of a medical school approved at the time of graduation, or subsequent to graduation, by the Council of Education and Hospitals of the American Medical Association." They requested that the plans be so amended as to relieve them of such restrictions. The plans so developed and approved were in fact made by the Children's Bureau, and the State Health Officer, Dr. Cox, so informed complainants, and told them that he would write the Children's Bureau concerning their complaint, which he did. The Children's Bureau replied that it could not permit the amending of the plans, enclosing in its letter of reply Circular No. 1, which contained the hereinabove quoted instructions as to who were qualified physicians and nurses and entitled to participate in the Act. It is admitted that the complainants and numerous other physicians and surgeons of all schools of medicine and licensed to practice their profession in Texas were not graduates of the schools so designated, and were therefore excluded from participating and receiving the benefits of the Act with respect to the treatment of infants.

Appellees, several Osteopathic physicians and surgeons licensed by the State Board of Medical Examiners of Texas to practice medicine and surgery in this State, instituted this proceeding for themselves and others similarly situated against appellants, the State Board of Health of Texas, its members, and Dr. George W. Cox, the State Health Officer of Texas, for and obtained judgment permanently enjoining appellants from operating under the plans so developed and promulgated until the same should be so amended as to permit appellees and those similarly situated to participate in the allotment made to the State of Texas with respect to treatment of infants; and further restrained appellants from promulgating or adopting any other plans that would have the effect of excluding appellees and those similarly situated from participating in the benefits of the allotment made to the State of Texas for use in the emergency infant care plan, herein referred to as the EMIC plan.

■ Appellants contend that the state courts have no jurisdiction over this suit under the rule stated in 21 C.J.S., Courts § 525, p. 796, as follows: "In the absence of congressional sanction, state courts cannot entertain suits against the United States or its agencies, including corporations created by the national government, and are without jurisdiction to control or restrain the official conduct of federal officers or agents, federal courts having exclusive jurisdiction over such suits."

■ This appropriation act does not sanction or authorize state courts to entertain suits with respect to any matter arising thereunder. Under such appropriation act appellants are not acting as state officials, but merely as the agency of the federal government through which the appropriation is to be expended. The Act does not authorize the appellants to receive or administer any portion of the funds appropriated and allotted to Texas except

under a plan approved by the Chief of the Children's Bureau. The record shows that the Children's Bureau in fact outlined the plans for the administration of the fund appropriated to Texas, and approved such plans as required by the Act. Neither the act nor any Texas statutes undertake to authorize appellants to act in any manner except as an agency of the federal government in administering the federal fund appropriated by the Congress to aid in the care of wives and infants of certain enlisted men.

The same Act and the identical principle of law as here involved were determined by the Supreme Court of Wisconsin in the case of Hecker v. Gunderson, 245 Wis. 655, 15 N.W.2d 788, 791. Wisconsin does not license osteopaths as practitioners of medicine, and in consequence the State Board of Health excluded them from participation in the EMIC plan here involved. The court held that:

"The state board of health then resubmitted to the Children's Bureau the former plan which limited participation in the EMIC plan to persons licensed to practice medicine and surgery, and who are graduates of certain approved schools. Thereupon, the Children's Bureau of the United States Department of Labor approved the plan submitted by the state board of health. That plan is being carried out by the Children's Bureau. It was the approval of the plan by the federal bureau that gave the EMIC program its vitality.

"From the foregoing, we conclude that the allegations of the complaint, as well as the relief demanded, are solely concerned with the proper distribution of federal funds by a federal administrative board, through the Wisconsin state board of health acting as its agent. The several appropriations made by Congress to carry out the EMIC program were all made to the United States Department of Labor, Children's Bureau, which bureau allots the funds to the several states to carry out the program according to plans approved by the federal bureau. That puts this controversy out of our reach. * * *"

In the case of Goldstein v. Sommervell, 170 Misc. 602, 10 N.Y.S.2d 747, it is held that the "Work Progress Administration" is a "federal agency" and as such is immune from suit in a state court.

In the case of Knox National Farm Loan Association v. Phillips, 300 U.S. 194, 57 S.Ct. 418, 81 L.Ed. 599, 108 A.L.R. 738, it is held that said association is an instrumentality of the federal government, and that the state courts have no jurisdiction to wind up its business by receivership or otherwise. See also Hinkle v. Town of Franklin, 118 W.Va. 585, 191 S.E. 291; Helms v. Emergency Crop and Seed Loan Office, 216 N.C. 581, 5 S.E.2d 822; and Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 646, 88 L.Ed. 892, which is a recent case, and in which the contention was made, but overruled, "that Congress could not constitutionally withhold from the courts of the States jurisdiction to entertain suits attacking the Act (Emergency Price Control Act of January 1942, 50 U.S.C.A.Appendix § 901 et seq.) on constitutional grounds."

The foregoing quotation from the Hecker case overruled the contention of appellees that the Congress, under the appropriation act in question, leaves the development and setting up of the plan for the disbursement of the funds wholly to the state health agencies. The Act provides that the state health agencies must adopt rules for the distribution of the funds, and who may participate in care of the wives and infants of soldiers and aviators, but expressly provides that such rules and plans must be approved by the Children's Bureau at Washington; and as was said in the Hecker case, "it was the approval of the plan by the federal bureau that gave the EMIC program its vitality."

Having held that state courts are given no jurisdiction over the United States or its agencies charged with the administration of the appropriation Act in question, the judgment of the trial court must be reversed, the injunction dissolved, and the suit dismissed. This conclusion renders unnecessary any interpretation of the Act by this court. Nor do we need to pass upon the plea in abatement of appellants, urging that since neither the United States, nor the Labor Department, nor the Children's Bureau was made a party, the suit should be abated for want of necessary parties.

The judgment is reversed, injunction dissolved, and the suit is dismissed.

Reversed, injunction dissolved, suit dismissed.