National Farm Loan Association of Marianna *v.* Moye.

4-9064                                    226 S. W. 2d 968

Opinion delivered February 13, 1950.

*Hal B. Mixon* and *G. V. Head,* for appellant.

*Burke & Burke,* for appellee.

MINOR W. MILLWEE, Justice. The question for decision is whether a stockholder of a solvent national farm loan association, having paid in full his federal land bank loan, is entitled to retirement of his association stock at par or at book value.

In August, 1922, appellee, J. M. Moye, obtained a $4,000 loan from The Federal Land Bank of St. Louis through the Lee County National Farm Loan Association, a national farm loan association organized under the Federal Farm Loan Act (12 U. S. C. A. §§ 636-1012). In obtaining the loan appellee purchased stock in said association in the amount of five per cent of the loan and of the par value of $200 as required by 12 U. S. C. A. § 733.

In 1937 said association consolidated with two other associations organized under the Federal Act to form Delta National Farm Loan Association. Thereupon appellee's stock in the old association was cancelled and he was issued stock in Delta of the par value of $200. At the time of said cancellation, Lee County National Farm Loan Association was indebted to The Federal Land Bank of St. Louis in an amount which exceeded association assets by $158,136.87, said indebtedness representing losses sustained by the land bank on loans made by the bank through the association and indorsed by it pursuant to 12 U. S. C. A. § 761.

In May, 1941, appellee obtained a loan of $8,000 from the Federal Land Bank of St. Louis through Marianna National Farm Loan Association and purchased stock in said association of the par value of $400 as required by the Federal Act. At the time of this loan the Marianna Association had reserves and surplus aggregating $676.74 of which amount the sum of $156.88 constituted legal reserves which the association was required by 12 U. S. C. A. § 911 to set aside.

On April 15, 1947, Delta National Farm Loan Association and Marianna National Farm Loan Association consolidated to form National Farm Loan Association of Marianna, the appellant. Appellee's stock in each of the consolidating associations was cancelled and he was issued two stock certificates in appellant for shares having a par value of $200 and $400, respectively. This consolidation was part of a general plan for reorganization and rehabilitation of national farm loan associations in the Sixth Farm Credit District and was made pursuant to consolidation agreements of March 4, 1947, entered into by each of the two consolidating associations with The Federal Land Bank of St. Louis. Under the agreement between Delta and the land bank, the latter released and discharged the former from its indebtedness to the bank in an amount which exceeded association assets by the sum of $327,229.30. The Marianna National Farm Loan Association was solvent at the time of consolidation and had no unpaid liabilities to the bank.

Appellant also agreed with the land bank to establish and maintain over a five year period, insofar as it is able, initial cash reserves, in addition to the legal reserve required by 12 U. S. C. A. § 911, equal to one-half the sum obtained by multiplying the outstanding volume of loans made through appellant by the reserve percentage used by the bank in the reserve area in which appellant is located. The land bank's reserve percentage in the reserve area was 8.02 per cent, thus making the appellant's reserve requirement 4.01 per cent. As a part of its rehabilitation plan, the land bank paid to the associations in the Sixth Farm Credit District a 30 per cent dividend on their stock in the bank in order to enable the associations to set aside a substantial portion of the reserves required under the reorganization agreements.

During the time appellee was a stockholder in Lee County and Delta National Farm Loan Associations no dividends were paid. As a stockholder in Marianna National Farm Loan Association, appellee received dividends as follows: 4% on November 20, 1944; 5% on September 30, 1945; and 5% on May 31, 1946.

On May 16, 1947, appellee paid the balance remaining due on his two loans. As a part of said payment on the $4,000 loan, stock owned by appellee in appellant of the par value of $200 was retired and cancelled at par, and the amount of $200 was credited to appellee as a final payment on the loan. In the same manner appellee's stock in appellant of the par value of $400 was cancelled and retired at par and $400 credited to appellee as a final payment on the $8,000 loan. Appellee gave appellant a check for the balance due on the two loans less the $600 credit for the par value of his stock.

On May 31, 1947, appellant declared and paid to its stockholders a 5% dividend. Appellee was a member of appellant's board of directors from the date of appellant's organization until May 16, 1947, and, for several years prior thereto, had been a director of Marianna National Farm Loan Association.

This suit was instituted by appellee against appellant on January 22, 1948, as one to recover dividends declared or which should have been declared on earnings of the association which allegedly accrued prior to May 31, 1947. However, at the trial on November 11, 1948, it was stipulated that, under the pleadings, appellee might seek recovery of the difference between the par value and book value of the stock cancelled on May 16, 1947. It was also agreed that on said date appellant's stock had a book value of $6.30 for each $5.00 share of stock, if a certain indemnity account credit was not to be considered in determining book value.

The trial court entered a decree finding that appellee's stock had a book value of $756 on May 16, 1947, for which credit should have been given on his indebtedness instead of the par value of said stock actually allowed in the amount of $600. Judgment was accordingly rendered in appellee's favor for the sum of $156 and the association has appealed.

The provisions of the Federal Farm Loan Act pertinent to the instant controversy are found in §§ 7 and 8 of

said.act and appear in 12 U. S. C. A. § 721, and 12 U. S. C. A. § 733, respectively. 12 U. S. C. A. § 721 provides: "Whenever any national farm loan association shall desire to secure for any member a loan on first mortgage from the Federal Land Bank of its district it shall subscribe for capital stock of said land bank to the amount of 5 per centum of such loan, such subscription to be paid in cash upon the granting of the loan by said land bank. Such capital stock shall be held by said land bank as collateral security for the payment of said loan, but said association shall be paid any dividends accruing and payable on said capital stock while it is outstanding. Such stock may, in the discretion of the directors, and with the approval of the Farm Credit Administration, be paid off at par and retired, and it shall be so paid off and retired upon full payment of the mortgage loan. In such case the national farm loan association shall pay off at par and retire the corresponding shares of its stock which were issued when said land bank stock was issued."

12 U. S. C. A. § 733 provides: "No persons but borrowers on farm land mortgages shall be members or shareholders of national farm loan associations. Any person desiring to borrow on farm land mortgage through a national farm loan association shall make application for membership and shall subscribe for shares of stock in such farm loan association to an amount equal to 5 per centum of the face of the desired loan, said subscription to be paid in cash upon the granting of the loan. If the application for membership is accepted and the loan is granted, the applicant shall, upon full payment therefor, become the owner of one share of capital stock in said loan association for each $100 of the face of his loan, or any major fractional part thereof. Said capital stock shall be paid off at par and retired upon full payment of said loan. Said capital stock shall be held by said association as collateral security for the payment of said loan, but said borrower shall be paid any dividends accruing and payable on said capital stock while it is outstanding."

It is clear from these provisions that when a borrower obtains a loan from a Federal Land Bank he is required to subscribe for stock in the association equal, at the par value thereof, to 5 per cent of the amount of his loan and that said stock "shall be paid off at par value and retired upon full payment of the loan." (12 U. S. C. A. § 733, *supra*.) When the borrower subscribes for stock at par and obtains his loan, the association likewise subscribes for stock in the land bank at par to the amount of 5 per cent of said loan. When the loan is paid in full, the association's stock in the bank must also be paid off and retired at par. (12 U. S. C. A. § 721, *supra*.)

Appellee concedes that he is only entitled to the par value of his stock if the language of the act is to be followed literally, but contends that the decree finding him entitled to the book value of the stock should be sustained on the authority of *Western Clay National Farm Loan Association* v. *Lilly*, 189 Ark. 1004, 76 S. W. 2d 55, 95 A. L. R. 1506, and *Knox National Farm Loan Association* v. *Phillips*, 300 U. S. 194, 57 Sup. Ct. 418, 81 L. Ed. 599, 108 A. L. R. 738. Appellee construes these cases as holding that a stockholder in an insolvent association is entitled to receive the actual value or book value of his stock when he pays his loan, and says: "If the stockholder is only entitled to actual value of his stock when it is worth less than par, it must follow as a natural consequence that he is entitled to actual value when the stock is worth more than par."

In the Lilly case, *supra*, a borrower who had paid his loan in full sued the association for the par value of his stock. The association was insolvent. This court followed and quoted at length from the opinion in *Byrne* v. *Federal Land Bank*, 61 N. D. 265, 237 N. W. 797. The gist of the holdings in both cases is found in the following statements in the Byrne case which were approved by this court in the Lilly case: "While the statute requires the retiring of the shares at par, it contemplates a solvent institution. . . . The statute contemplates that when the loan is paid the stock shall be cancelled, and the necessary corollary of this is that the par value of the stock be returned; but it

is evident from the statute that Congress had in mind the possibility that such Farm Loan Association may become insolvent. . . . When we consider the act as a whole, it is apparent Congress did not intend the Farm Loan Association to pay off the stock at par when it had nothing with which to pay the stock."

In the Lilly case it was said: "We know of no rule of law, and have been cited none by counsel, which permits a stockholder in an insolvent corporation to withdraw his capital investment at par." The borrower also contended that the 1923 amendment to the Federal Farm Loan Act, found in 12 U. S. C. A. § 966, disclosed a legislative intent that the borrower's stock should be retired at par upon full payment of the loan, regardless of the solvency or insolvency of the association. This court rejected this contention, saying: "We cannot agree with this contention. We are convinced that the amendment of 1923 has application to solvent local associations only which are in process of voluntary liquidation. Any other construction of the amendment nullifies and destroys the clear intent and purposes of the original act, and would nullify and destroy the whole theory of cooperation by the borrowers which is significantly demonstrated by all provisions of the original act. If a borrower be permitted to pay off his loan and withdraw his capital stock at par value in an insolvent association, there is no cooperation left."

The holding of the U. S. Supreme Court in *Knox National Farm Loan Assn.* v. *Phillips, supra,* is stated as follows in Note 2, 12 U. S. C. A. § 721: "A national farm loan association is under no obligation to retire stock upon the repayment of a mortgage loan made to the shareholder and the Federal Land Bank is under no obligation to retire the corresponding shares of bank stock subscribed for by the association when the association is insolvent and the withdrawing member would thus receive a preference over others." In discussing the complementary character of §§ 721 and 733 of 12 U. S. C. A., *supra,* Justice CARDOZO, speaking for the court, said, 300 U. S. (194, 57 S. Ct. 421): "The association is not to retire its own shares and repay to the subscriber the amount of his

subscription until the land bank has retired the corresponding shares of bank stock subscribed for by the association, and has paid back to the association the par value thereof. Only thus can the association be put in funds wherewith to make payment to its own subscribers . . ." This language indicates that the statute requires both the bank and the association to retire their stock at par.

The effect of the decisions in both the Lilly and Phillips cases, *supra,* is that an association member who has paid his loan in full has no right of action against the association for recovery of the par value of his shares if the association is insolvent. The cases do not hold that a borrower in such case may recover the book value, nor is "par value" as used in the act interpreted to mean "book value." The clear implication of both decisions is that the borrower is only entitled to recover the par value of his stock upon final payment of his loan when the association is solvent, as in the instant case.

Although there have been several amendments to the Federal Farm Loan Act, §§ 721 and 733 of 12 U. S. C. A. have been left intact and we find nothing in any of these amendments which could be construed as changing the plain terms of said sections. Appellee says the 1937 amendment (12 U. S. C. A. § 967) demonstrates an intention that the stockholder upon payment of his loan should be entitled to the actual or fair book value of stock upon cancellation. This amendment applies to insolvent associations and authorizes the Farm Credit Administration to provide for the appointment of a conservator of such associations. It also provides that an insolvent association may retire its stock at fair book value if the stockholder is willing to accept it, but it does not require that this be done. The amendment was passed shortly after rendition of the decision of the U. S. Supreme Court in the Phillips case, *supra,* for the evident purpose of providing for stock retirement in insolvent associations and without changing §§ 721 and 733, *supra,* which relate to stock retirement in solvent associations.

It is also clear from the legislative history of the Federal Act that Congress fully understood and intended that stock in a solvent association should be retired at par upon final payment of the loan. On March 28, 1916, Senator McCumber of North Dakota, in discussing the bill which was subsequently enacted as the Federal Farm Loan Act, made the following statement (53 Cong. Rec. 4994): "In other words, if a farmer wants to borrow $2,000 he must first spend a hundred dollars to entitle him to that privilege. Of course, that hundred dollars, on which he will have to pay interest to someone, may be a complete loss. The provision is that it will be returned to him when the loan is paid."

In the House of Representatives on May 9, 1916, Mr. Hastings of Oklahoma made the following statement with reference to the purchase and retirement of stock (53 Cong. Rec. 7703): "The members may borrow 60 per cent of the value of their farm lands and 20 per cent of their insured permanent improvements through the association by subscribing for stock in the local association to the amount of 5 per cent of the desired loan. The local association in turn subscribes for a like amount in the Federal land bank. This stock is capable of paying dividends, and is paid off at par when the loan is paid."

On May 9, 1916, Senator Caraway of Arkansas, in explaining the bill at length, said (53 Cong. Rec. 7772): "Each borrower must subscribe and pay for stock in the association equal to 5 per cent of the amount that he wishes to borrow. This stock he must carry as long as he is indebted to the association. When he shall have paid his debt and canceled out his mortgage, the stock is canceled, and he is returned its par value." Other discussions showing that the provisions in the act for retirement of stock at par had the full sanction of Congress are found in 53 Cong. Rec. 6693, 6697, 6791, 6792, 7713-14, 7881, 7915, 7992, and 10109.

Appellee also stresses the cooperative features of the Federal Act and argues that if a stockholder is required to accept par for his stock he may thereby be precluded

from sharing in earnings which the association may maintain in the form of excessive reserves and surplus. On the other hand appellant points out the inequities that are likely to result from stock retirement on the basis of book value. It is not unlikely that inequities may result in individual cases regardless of rule to be applied. A consideration of these matters involves the wisdom or policy of the Act with which the courts are not concerned where the meaning of a statute is clear and unambiguous. *Mc-Donald* v. *Wasson,* 188 Ark. 782, 67 S. W. 2d 722; *Thompson* v. *U. S.,* 246 U. S. 547, 38 Sup. Ct. 349, 62 L. Ed. 876.

Appellant was solvent on May 16, 1947, when appellee fully paid his loan. Under the plain wording of 12 U. S. C. A. § 721 and 12 U. S. C. A. § 733 which administrators of the Federal Farm Loan Act have followed for 32 years, we conclude that appellee was entitled to retirement of his association stock at par and not at book value upon full payment of his loan. In short, insofar as solvent associations are concerned, the statute means what it plainly says.

Appellant's abstract of the record sufficiently complies with Rule 9(b) of this court and appellee's motion to dismiss the appeal on this ground is denied.

The decree is reversed and the cause remanded with directions to dismiss the complaint and enter judgment for appellant.