WIDOW DUCHAMP v. WIDOW DANTILLY, on a Rule of BACHEMIN.

| 9 | 247 |
|---|---|
| 122 | 735 |

The legal subrogation extends to every case where a person pays a debt which he has an interest in discharging. And if the debt discharged be by judgment, the court may subrogate such person to the plaintiff's judgment with the right of execution.
C. C. 2157.

APPEAL from the Fourth District Court of New Orleans, *Reynolds*, J.

St. Paul & Bouney, for the original plaintiff and defendant, cited Pothier, vol. 17, p. 278, No. 73.

Translation from "Boileux" on subrogation. On Art. 1251 N. C. and 2157 L. C.

Legal subrogation takes place without the consent of either the debtor or creditor. This favor, based on equity, is only extended to those who are authorized to pay the debt of another. The Code has determined the cases in which the subrogation takes place: A judgment that would extend it to other circumstances should be avoided. Analogies cannot be admitted on this subject. The law declares a subrogation in the following cases: 1st For the benefit of the creditor who pays another creditor who has priority over him, since he has an interest in reducing the number of creditors, either to put a stop to litigations or to avoid the costs that might absorb the common pledge, for those costs will increase in proportion to the number of creditors.

We will close with a few cases of our own, wondering how they escaped the vigilant search of our opponents, in their eager desire to present at least both sides of the question: The French courts are quoted in Dalloz, Dictionnaire de Jurisprudence Vo. Subrogation, section de la Subrogation Legale.

No. 71. Held, that subrogations, whether legal or conventional, cannot extend to any other cases than those enumerated by law.

No. 74. Even before the publication of the Civil Code, one who not being a creditor, had paid a mortgage creditor, could not be subrogated to his rights, except by special agreement.

No. 87. From the letter and spirit of the law, it results that legal subrogation only arises in case of an actual payment, made by virtue of the purchase.

No. 93. Held, that the purchaser of an hereditament who pays the mortgage creditor of his vendor is subrogated to the rights of said creditor.

No. 94. Does the subrogation extend to all the property of the vendor, or is it restricted only to the portion sold? (Here a review of Duranton and the other authors already quoted.)

Held, that this subrogation extends only to the property sold itself and to such other portion as was, together with it, jointly affected to the payment of the same debt.

No. 95. Recognition of the above principle in a decision of January 15, 1833.

Vol. 7 N. S. 602. *Nolte* v. *His Creditors*. The court, after having refused a subrogation to a party who had furnished money for the payment of a note due for wages of workmen engaged in building a house, says at page 603: We are ignorant of any law which gives to the party who furnishes money for the payment of a debt the rights of a creditor who is thus paid: The legal claim above belongs not to all who pay a debt, but only to he who being bound for it, discharges it. The appellant cannot therefore claim the benefit of a legal subrogation if he has shown no conventional one: the rights of the creditor paid with his money are therefore absolutely extinguished and no part of them can be exercised by the appellant.

R. R. 5, 204. *Harrison* v. *Bisland*. "A legal subrogation exists in favor, not of all who pay a debt, but only of those who being bound for it discharge it."

R. R. 9, 476. *Nicholls* v. *His Creditors*. "Payment of a note secured by mortgage by one not bound for it and who had no interest in discharging it, will not subrogate him to the right of the party for whom he paid: The payment will extinguish the debt and the mortgage given to secure it; and the

DUCHAMP
v.
DANTILLY.

claim for reimbursement will constitute the party who paid an ordinary credi tor of him for whose benefit the payment was made. C. C. 2156, 2157.

A. R. 4. *Salaun* v. *Relf.* Held, that the acceptor of bills of exchange given for the payment of certain slaves and secured by mortgage on said slaves, is not after payment subrogated to the said mortgage. Payment has extinguished the obligation and unless specially stipulated, no subrogation takes place in favor of the acceptor, of the accessaries of the debt.

The foregoing authorities from our own Jurisprudence clearly show that no subrogation can have arisen in the case at bar. and if it had, its effect would be restricted to the property sold or to such other as was jointly bound for the payment of the debt, but in no case should this subrogation be suffered to extend to all the property of the debtor indiscriminately.

*J. & E. Burmudez*, for *Bachemin* :

The provisions of the 2157 Article of the Civil Code granting a subroga-tion of right by reason of such payment, has been commented upon as corresponding to the Article 1251 of the Napoleon Code, by Denizart, ver-bo subrogation, p. 575, No. 19. Grenier Hypoth, vol. 2, p. 440, 2d alinea. Sirey C. C. Aunoté note 21, on Art. 1251, p. 553. Mazerat, Book 3d, 212, No. 686, 687, 688, 689. Toullier, vol. 7, p. 188, No. 2, p. 191, note 1, p. 231, 165. Boileux, vol. 2, p. 604, No. 2, p. 605, No. 3, p. 607, note on Art. 1252. Dictionnaire du Droit Civil, verbo subrog. leg. vol. 7, p. 14, 2d alinea. Marcadé, vol. 4, p. 585, 586, 587. Berriat St. Prix, vol. 2, p. 487, on Art. 1251, verbo motifs. Rogron, notes on Art. 1256. Duranton, edition Belge, vol. 7, p. 96, No. 156, 157, 158, 159, 160, 161, p. 114. No. 183.

BUCHANAN, J. (VOORHIES, J., absent. OGDEN, J., absent and dissenting.) The question presented to the consideration of the court in this cause, is one of subro-gation. The record shows that *Jacques Bachemin, Junior*, and *Theodule Bache-min, Junior*, being joint owners of a lot of ground with the buildings and improvements thereon, sold said property on the 17th January, 1850, to their grandmother, the defendant; who, on the 11th December, 1851, mort-gaged the same in favor of *Jacques Bachemin, Junior*, or any holder of two notes, one for eight hundred dollars, and one for two hundred, dated on said day, and payable one year after date. On the 17th December, 1852, the note of $800 being past due and unpaid, the plaintiff, holder of the same by blank endorsement of the payee, brought this suit, *via ordinaria ;* obtained judg-ment by default, with privilege on the property described in the petition and act of mortgage on file, and took out a fi. fa. on said judgment, under which writ the Sheriff seized and advertised the property.

In the mean time, however, one *Thodule Bachemin, Senior*, who was a credi-tor of the vendors of the defendant before the date of her purchase of the lot mortgaged to plaintiff, had obtained judgment against his debtors, on the 25th February, 1852, and for the purpose of executing his said judgment, had brought a revocatory action against defendant, in which there was judgment on the 13th December, 1852, annulling the sale of the 17th January, 1850, as fraudulent and simulated. Therefore, the said *Thodule Bachemin, Senior*, executed his judgment against the other two *Bachemins*, his debtors, by seizing and selling the property mortgaged by defendant, as the property of the *Bache-mins*. At that Sheriff's sale, on the 15th February, 1853, *Theodule Bachemin, Senior*, became the purchaser of the property. Three days afterwards, on 18th February, 1853, plaintiff issued her fi. fa. in this case, as above mentioned. Before the day of sale, however, *Theodule Bachemin, Senior*, satisfied the writ in the hands of the Sheriff, and on the same day procured an order of court, subrogating him to the rights of plaintiff under her judgment. Plaintiff and defendant have joined in a rule against *Bachemin*, to test the validity of this subrogation.

Subrogation, according to Art. 2157, C. C., takes place of right:

1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his, by reason of his privileges or mortgages.

2. For the benefit of the purchaser of immovable property, who employs the price of his purchase, in paying creditors to whom the hereditament was mortgaged.

3. For the benefit of him who being bound with others, or for others, for the payment of the debt, had an interest in discharging it.

This Article is taken literally from the Code of Napoleon, Article 1251. And the commentators upon that Code agree that the subrogation spoken of in the second paragraph of the Article, takes place in favor of the purchaser, even although it be not precisely the price of his purchase that he employs to pay a mortgage upon the property purchased. Marcadé says on this subject:

"En effet, si l'acquéreur avait employé au paiement une somme au-de-là de son prix d'acquisition, ou quand même il aurait d'abord payé ce prix à son vendeur, et n'aurait desintéressé les hypothécaires qu'avec d'autres deniers, il n'en aurait pas moins la subrogation ; et si on prétendait la lui refuser, en s'armant, à tort, des termes de notre paragraphe, on voit qu'il l'aurait toujours d'après le paragraphe suivant." Vol. 4, page 586.

As this author observes, the legal subrogation extends to every case when a person pays a debt *which he has an interest in discharging.* Let us apply this test to the present case. The defendant mortaged the property in 1851, at which time she was ostensibly the owner. It is true, her title was afterwards set aside as fraudulent and simulated. But the effect of that judgment was to declare the property to belong to *Jacques Bachemin, Jr.*, who was an endorser on the note secured by mortgage, and was equally bound for its payment with defendant. The judgment in the revocatory action had no effect, therefore, upon Mrs. *Duchamp's* mortgage claim upon the property. *Theodule Bachemin, Senior*, had only acquired at Sheriffs' sale, his nephew's title to the property, and it was liable to Mrs. *Duchamp's* judgment in his hands. He had therefore a clear interest in discharging the debt, and consequently the District Court did not err in subrogating him to the plaintiff's judgment, with all the rights of execution which the plaintiff possessed.

The record shows that after satisfying the plaintiff's claim and getting an order of subrogation to her rights under the judgment, on the same day, the appellee issued an alias fi. fa., under which certain slaves of the defendant have been seized and sold. The judgment which is the subject of the present appeal, was rendered upon a rule to quash this alias fi. fa. The original plaintiff, whose claim was satisfied, joined the defendant in taking that rule. It is not very clearly seen, what interest she (the plaintiff) had in the matter. No objection has been made, however, on this account, and it is sufficient that one of the parties appealing may have been aggrieved by the judgment discharging the rule.

The counsel of appellants has insisted, with considerable force of argument, upon the point, that the law gave to the appellee no such subrogation, as would authorize him to levy upon any other property than that which had been already seized in his hands and released by his payment. But we think the authorities quoted by the leared counsel are not entirely applicable to the case at bar. The appellee stands before us not only as a party who has satisfied a mortgage, but as one who has satisfied a judgment; weighing upon his own

property it is true, but also personal against the defendant. The satisfaction of this debt, which he had an interest in discharging, vested him with all the rights of the creditor under her judgment. The facts of this case therefore take it out of the doctrine of restricted subrogation, which we are informed by Toullier, was that of Cujas, and of the older doctors, and which Toullier himself at one time advocated. But on this point, the other commentators of the Code Napoleon, such as Marcadé, Boileaux and others, express an opinion directly the reverse, and Toullier himself afterwards changed his opinion, upon the extent of legal subrogation under the new legislation, as he informs us in a note to page 191, volume 7.

Judgment affirmed, with costs.