# MARCH, 1940.

LAURA BROUK, PLAINTIFF AND RESPONDENT, V. SAM M. McKAY, AS
SECRETARY-TREASURER OF JEFFERSON NATIONAL FARM LOAN
ASSOCIATION OF BARNHART, JEFFERSON COUNTY, MISSOURI, A
CORPORATION, AND JEFFERSON NATIONAL FARM LOAN ASSOCIATION
OF BARNHART, JEFFERSON COUNTY, MISSOURI, A CORPORATION,
DEFENDANTS; FRANK F. JOHNSTON, DEFENDANT AND APPELLANT.
—137 S. W. (2d) 593.

St. Louis Court of Appeals.   Opinion filed March 5, 1940.

*Peyton R. Evans, G. V. Head* and *Walter R. Brown* for *Amici
Curiae.*

512

*Albert S. Ennis* for appellant.

*Frank Dietrich* and *R. E. Kleinschmidt* for respondent.

HUGHES, P. J.—*Amici Curiae* have so clearly and accurately made statement of the case in their brief that with slight changes we adopt the same as our statement of the issues involved, *viz.*: This is an appeal by defendant Frank F. Johnston from a judgment of the Circuit Court of Washington County, Missouri, in a suit originally brought by Laura Brouk against Sam M. McKay, as secretary-

treasurer of Jefferson National Farm Loan Association of Barnhart, Jefferson County, Missouri, a national farm loan association organized under an act of Congress known as the Federal Farm Loan Act. The suit was brought to recover the proceeds of stock in the association issued to Frank F. Johnston in connection with a loan obtained by him from The Federal Land Bank of St. Louis.

On April 3, 1918, The Federal Land Bank of St. Louis loaned to Frank F. Johnston the sum of $9,000, as evidenced by his promissory note for that amount, payable on an amortization plan in sixty-eight equal semi-annual installments, secured by first mortgage on 166.4 acres of farm land in Jefferson County, Missouri. Johnston's application for the loan was filed with the Jefferson National Farm Loan Association of Barnhart, Jefferson County, Missouri. The loan application included an application for membership in the association. Johnston was duly elected to membership in the association by a vote of the directors, and he subscribed for, and there was issued to him at the time of the granting of the loan ninety shares of stock in the association, of the aggregate par value of $450 which was paid for from the proceeds of the loan. The association issued its certificate of stock representing the ninety shares to Frank F. Johnston, dated May 24, 1918. The stock certificate was held in the files of the association, as security for the loan, and the association issued to Johnston its receipt for the certificate.

At the same time, the association, having approved the loan application and endorsed the note evidencing the loan, subscribed for stock in The Federal Land Bank of St. Louis in the sum of $450, and pledged said stock with the bank as collateral security for the payment of the loan.

On December 10, 1921, Johnston lost title to the land by the foreclosure of a third deed of trust executed by him and his wife on April 29, 1918, Alfred H. Murphy being the purchaser at the foreclosure sale. On April 22, 1922, a second deed of trust executed by Johnston and wife on April 8, 1918, was foreclosed, Carroll A. Berkley being the purchaser at that sale. Murphy and wife conveyed to Ike Levinson and wife on August 22, 1927. Berkley and wife conveyed to Ike Levinson and wife on August 22, 1927. Levinson and wife conveyed to Frank Brouk and Laura Brouk, as tenants by the entirety, on August 20, 1929, the only reference in the deed to the land bank note or mortgage being this provision following the land description: "subject to mortgage dated April 3, 1918, recorded April 11, 1918, in Trust Book 51, p. 497, to secure note for the original sum of $9,000, of which note there is still an unpaid balance of $4,453.45." The deed made no reference to, and did not purport to convey, the association stock purchased by Johnston when the loan was made.

At the time of the purchase of the farm by the Brouks from the Levinsons the Brouks did not know that any association stock had

been issued in connection with the loan. They knew nothing about any stock in the association, and no stock was transferred to them. They did not apply for membership in the association and were not elected to membership.

Frank Brouk died March 3, 1932. On May 1, 1932, Laura Brouk paid to The Federal Land Bank of St. Louis the sum of $3653, being the balance then unpaid on the bank's loan. On May 24, 1932, the bank canceled and retired at par the stock in the bank subscribed by the association in connection with the loan, and remitted to the association the proceeds thereof, $450. Thereupon the association canceled and retired at par the stock in the association issued to Johnston when the loan was made. Johnston had never assigned or transferred the stock and it still stood in his name on the books of the association.

On September 14, 1937, in the Circuit Court of Jefferson County, Missouri, Laura Brouk sued Sam M. McKay, as secretary-treasurer of Jefferson National Farm Loan Association of Barnhart, Jefferson County, Missouri, for the recovery of said stock proceeds. Thereafter plaintiff amended her petition by making the association a party defendant. McKay filed his separate answer. The association filed its separate answer in the nature of a bill of interpleader, alleging that Johnston, Berkley, Levinson and Laura Brouk claimed the stock proceeds, and asked permission to pay them into court, and for an order requiring the claimants to interplead for the fund. Such an order was made and the fund paid into court, and McKay and the association were discharged. Johnston filed an answer, claiming the fund, but Berkley and Levinson did not interplead.

The cause was tried before the court on November 30, 1938. Thereafter, by agreement of parties, the case was transferred to the Circuit Court of Washington County, Missouri. On December 15, 1938, the court found the issues for plaintiff and against defendant Johnston. Motions for new trial and in arrest of judgment were overruled, and an appeal to this court was duly taken by defendant Frank F. Johnston.

By leave of this court the twelve Federal Land Banks established under the Federal Farm Loan Act were permitted to file brief herein and participate in the oral presentation of the case.

Although a comparatively small amount is involved in this case, it is of major importance in the principles involved, not alone to the litigants in the case, but to every borrower, Federal Land Bank and National Farm Loan Association in the country, and hence is deserving of most careful consideration.

The issues have been to a degree simplified by the interpleader order of May 11, 1938. Hence, as to whether interpleader would lie at the instance of the defendant loan association has passed into the realm of things adjudicated. Whether the amount deposited in court under

that order, to-wit, $450, was the correct amount, or whether it should have been more by reason of dividends, went out of the case when that order was made without objection or exception, and that phase of the litigation was ended.

Thereafter, none of the parties named in the order interplead or made claim for the fund except the plaintiff, Mrs. Brouk, and the defendant Johnston, and the case as between them proceeded as though their pleadings constituted their interpleas; that so the only question tried, and properly so, was, which of these two parties was entitled to the fund.

It is strenuously insisted by respondent that although a stock certificate of the loan association was issued in Johnston's name when the loan was made, that it was never paid for by Johnston, and was never delivered to him, and that it had no present value whatever. Such position is not tenable. By the express terms of the law (12 U. S. C. 721, 733) it is provided that each borrower shall not only subscribe for but shall pay for such stock to the amount of five per cent of the loan, such payment to be in cash upon the granting of the loan by said land bank. What was done in this case? Let us look to the facts and determine? The loan was made and could only be made by the Federal Land Bank. The Jefferson National Farm Loan Association had no money to loan; its members like Johnston were borrowers; its functions were subsidiary to the land bank, and in aid of loans for its members from the land bank.

On the 3rd day of April, 1918, Johnston owned a farm of 166.4 acres; it may reasonably be inferred from the evidence that the farm at that time was worth in excess of $15,000, because he borrowed $9,000 from the land bank and shortly thereafter made two loans from others aggregating $6,000. But in any event it was worth in excess of the $9,000 loan, because under the law (12 U. S. C. 771, (5th) the land bank could not loan to exceed fifty per cent on the value of the land and twenty per cent on the value of the insured improvements. Johnston unquestionably put the farm into the transaction, and when he received the borrowed money, he certainly gave something for the loan—he gave his farm. And so it will not do to surmise that Johnston started with nothing and finally came out with nothing. The sum and substance of the original transaction by Johnston and the Governmental agencies was this: The land bank was willing to loan Johnston on the security of his farm $9,000, but with the condition attached, as the law required, that either out of other money Johnston had, or at his option out of the $9,000, he would subscribe and pay for stock in the loan association to the amount of one share worth $5 for each $100 of the loan, and that the loan association would hold his stock as security to it for its liability by reason of Johnston's $9,000 loan from the land bank. Johnston entered into this arrangement, and thereupon he executed a note to the land bank for $9,000,

and secured it by executing and delivering to the land bank a first deed of trust covering his farm. Having done this the land bank was indebted to him in the sum of $9,000 except for the completion of the stock agreement. Thereupon Johnston exercised his option of paying for the stock out of the $9,000, and consequently the land bank only paid Johnston $8550, and paid to the association the $450 stock subscription. It would have been a longer route, with no difference whatever in principle, if the land bank had counted out in currency and handed Johnston $9,000 and he in turn had taken $450 from that currency and handed it to the loan association in payment for his stock. It was Johnston's $450 that paid for the stock. The actual stock certificate was not delivered to Johnston; in fact it is never delivered to the borrower, but under the provisions of the law (12 U. S. C. 733) it must remain with the loan association as security for its liability on the note to the land bank. However, there was a constructive delivery to Johnston of the stock certificate by the issuance and delivery to him of a receipt for it by the loan association. And so when the transaction was closed in 1918 the result was that Johnston still owned a farm of 166.4 acres and he also owned ninety shares in the loan association for which he had paid $450, but the land bank held Johnston's note for $9,000, and to secure its payment held a first deed of trust on his farm, and the loan association held his certificate of stock as security for its liability to the land bank on Johnston's note. The rights of Johnston and of the land bank and of the loan association were fixed as of that date.

Thereafter on the 8th day of April, 1918, Johnston borrowed $5,000 from one Lowenstein and executed his note to evidence such indebtedness, and to secure the same executed a deed of trust covering his farm and which was subject to the deed of trust theretofore given to the land bank. Neither the land bank nor the loan association were parties to that transaction, and neither had anything whatever to do with it. By that act Johnston had created a second indebtedness against his farm, but it had no connection whatever with his stock in the loan association. The beneficiary under that second deed of trust had no more right to look to Johnston's stock in the loan association to secure that debt than he had to look to any other item of personal property belonging to Johnston; it was not pledged to him in any manner whatever. On the 29th day of April, 1918, Johnston made a third loan of $1,000 and gave a third deed of trust on his farm to secure it, of which the same may be said as of the second loan. It is under this second and third deed of trust that plaintiff derived title to the farm.

On December 10, 1921, the third deed of trust was foreclosed and Alfred H. Murphy, being the purchaser, received a trustee's deed, in which it was recited that the title conveyed was subject to first deed of trust for $9,000 and a second for $5,000. And on May 6, 1922, the

second deed of trust was foreclosed and Carroll A. Berkley, being the purchaser, received a trustee's deed, in which it was recited that the title conveyed was subject to existing deeds of trust of record. And on August 22, 1927, Carroll A. Berkley conveyed the land to Ike Levinson and Mary Levinson, his wife, by warranty deed, which deed recited that it was subject to an unpaid balance on deed of trust recorded on book 51, page 597 (being the land bank deed of trust). And on the same day Alfred H. Murphy and wife conveyed the land by warranty deed to Ike Levinson and Mary L. Levinson, his wife. There is also of record a quit-claim deed from Alfred H. Murphy and wife to Carroll A. Berkley, dated December 12, 1921, and reciting that the title conveyed is subject to first mortgage for $9,000 and second mortgage for $5,000.

Thereafter on August 20, 1929, Ike Levinson and wife conveyed the land by warranty deed to Frank Brouk and Laura Brouk, as tenants by the entirety, and reciting in such deed, "subject to mortgage dated April 3, 1918, recorded April 11, 1918, in trust book 51, page 497, to secure note for the original sum of $9,000 of which note there is still an unpaid balance of $4453.45." Thereafter Frank Brouk died and Laura Brouk, the plaintiff, and one of those interpleading, became the sole owner of the land subject to the lien of the deed of trust held by the land bank to secure payment of the balance of the note. Laura Brouk afterwards paid the balance of the note, and by reason thereof claims she is entitled to the value on cancellation of the certificate of stock in the loan association issued to and in the name of Frank F. Johnston.

Respondent takes the position that she assumed the payment of the balance of the note held by the land bank, and having assumed the payment of such balance and having thereafter paid it, she became the owner of the proceeds of the stock issued to Johnston. We do not so understand the facts or the law. In the first place she did not assume the payment of Johnston's note, and neither did her predecessors in title, Levinson, Murphy and Berkley. They each took the title subject to a prior incumbrance, to-wit, the land bank deed of trust. It is true that ordinarily a purchaser of real estate may actually assume a mortgage debt without a recital of such assumption in the deed under which he or she takes title, and such assumption of the debt may be established by parole evidence. It is so held in the following cases: Gillner v. Powell, 256 S. W. 124; Bensieck v. Cook, 110 Mo. 173, 186; Grace v. Gill, 136 Mo. App. 186, 191. However, such ruling does not avail respondent here for two reasons, first, the evidence in this case wholly fails to show any assumption of the land bank debt by Mrs. Brouk. On the contrary her own evidence shows that she at least did not assume the mortgage debt with any thought of that making her the final recipient of the proceeds from the stock certificate, because she frankly says that at the time they bought

the land they didn't know anything about such stock; and, second, in any event all those who had any dealings with the transaction were bound to take notice not only of the terms of the deed of trust held by the land bank, but of the law under which that loan was made, and the law provided (12 U. S. C. 771, par. 6) that "in case of the sale of the mortgaged land the Federal Land Bank may permit said mortgage and the stock interests of the lender to be assumed by the purchaser." Neither Mrs. Brouk nor her predecessors in title back to Murphy and Berkley had ever sought permission of the land bank to assume Johnston's debt, or sought to be made members of the loan association in his stead. And so we are unable to see how any one of them could legitimately claim the proceeds of Johnston's certificate of stock, whether they had attempted without permission to assume payment of his note or not. Johnston had never assigned or transferred his certificate of stock to anyone. Even if Mrs. Brouk had bought and paid for Johnston's stock, with an intention on her part to assume his debt to the land bank and become a member of the loan association, she could not have done so except upon a compliance with the law, which is as much a part of the transaction as if written in the deed of trust. Much less, not having bought and paid for that stock, could she assume the debt and own the stock without complying with the law.

We do not find that these questions in connection with the Federal Farm Loan Act have been before the courts of our own State heretofore, but we are not without authority from other States for the views herein expressed. The question was before the Court of Appeals of Tennessee in the case of Federal Land Bank of Louisville v. Robertson, 95 S. W. (2d) 317, and that court held that there could be no assumption of the debt by a purchaser from the mortgagor without the permission of the Federal Land Bank.

Such holding is founded on logical reasoning. If by express provision of the law the Federal Land Bank may permit, the contrary is likewise true, i. e. that it may also refuse to permit the mortgage and stock interests of the vendor to be assumed. It is evident that Congress empowered the bank to veto any attempted assumption of the debt and stock interests of a borrower by any person who might purchase the mortgaged farm where the bank prefers not to do business with such purchaser.

In the case of Radford v. Snyder National Farm Loan Association (Texas Civ. App.), 121 S. W. (2d) 478, we find a state of facts very similar to those involved here; James R. Hutto obtained a loan from the Federal Land Bank of Houston, through the Snyder National Farm Loan Association. In connection therewith he purchased stock in the association, and pledged the stock to secure the association in its endorsement. Thereafter he conveyed the land, subject to the land bank mortgage, to J. M. Radford, a judgment creditor, in satis-

faction of the judgment. In the negotiations culminating in the conveyance no mention was made of Hutto's stock in the association, and no assignment of the stock was executed. Two years subsequent to the conveyances of the land, Radford induced Hutto to execute an assignment of the association stock, on the representation that a transfer of the stock was necessary to clear the title to the land. Thereafter Radford's heirs paid the balance remaining due on the land bank mortgage, and demanded from the association the proceeds of the retired stock. Hutto also claimed the proceeds, as the record owner of the stock. The association sued Hutto and the Radford heirs, to require them to interplead for the fund. The court held Hutto to be entitled to the stock proceeds, on the theory that upon the conveyance of the farm a transfer of the stock was not intended or bargained for, and that the subsequent execution of the stock assignment was without consideration and constructively fraudulent.

In view of the Federal Farm Loan Act as we read it, and the facts in this case, we feel bound to the conclusion that Mrs. Brouk never bargained for and never acquired any right or title to the proceeds of the certificate of stock issued to Johnston by the loan association. It was issued to Johnston who subscribed and paid for it, and he has never assigned or transferred it in any manner, whether actually or by operation of law. The fact that he may have left Jefferson County many years ago, as said in oral argument, without knowing that he was entitled to the proceeds of the stock when the debt was finally paid could not affect the legal *status* in any way.

The case should therefore be reversed and the cause remanded with directions that the claim or interplea of defendant Johnston be sustained and the fund ordered paid to him. It is so ordered. *Becker* and *McCullen, JJ.*, concur.