## ASCENSION NAT. FARM LOAN ASS'N v. WHITNEY NAT. BANK OF NEW ORLEANS et al.

### No. 2152.

Court of Appeal of Louisiana. First Circuit.

Nov. 9, 1940.

Rehearing Denied Dec. 12, 1940.

Writ of Error Denied Feb. 3, 1941.

'Milling, Godchaux, Saal & Milling, of New Orleans, for appellant.

Carlos G. Spaht and Fred G. Benton, both of Baton Rouge, for appellees.

Harold Moses, of New Orleans, for Ascension National Farm Loan Assn.

OTT, Judge.

In 1923, Mrs. Mary Altemus Shaffer secured a farm loan on her plantation in Ascension Parish for the sum of $20,000, which loan was to be repaid in annual installments in accordance with the Federal Farm Loan Act, Title 12 U.S.C.A., Subchapter 1, Section 641 et seq. Mrs. Shaffer secured this loan from the land bank through the Ascension National Farm Loan Association, and as is required by 12 U.S.C.A. § 733, she paid for and secured 200 shares of stock at $5 per share in this Farm Loan Association (hereafter called the association). The stock was issued in her name and was held by the association as collateral security on the loan. This suit involves a controversy between the husband of Mrs. Shaffer, now deceased, who is claiming the proceeds of the stock as her universal legatee, and the Whitney National Bank which claims the proceeds of the stock as the transferee of the mortgaged property.

Some of the transactions hereafter mentioned were with the Whitney Central Trust & Savings Bank and the Whitney Trust & Savings Bank, but as it is conceded that the Whitney National Bank has acquired all the rights of these other named banks, we will refer to this bank for brevity as the Whitney Bank.

Under the provisions of the Farm Loan Act and the regulations issued in pursuance thereof, a borrower is required to purchase in the local farm loan association of which he becomes a member $5 worth of stock for each $100 of the loan secured. This stock is pledged to and held by the local association which in turn is required

to purchase a like amount of stock in the federal land bank which actually makes the loan. The local farm loan association is required to pledge and deliver to the said land bank this stock as additional security for the loan along with the note and mortgage of the borrower, and the local association is required to endorse the loan of the borrower as additional security. . If the borrower pays off his mortgage and if the local association has no other defaulted obligations of its borrowers whose paper it has endorsed for the land bank, the bank will then redeem in cash the stock in the bank which the association was required to purchase and pledge as further security on the mortgage of the borrower and the endorsement of the loan by the association. In turn, the local association will redeem its own stock and return to the borrower the par value thereof. If any dividends are declared on the stock of the local association during the time it is held by the association as security, these dividends are paid to the borrower as the owner of the stock. The land bank does not hold as pledged security to it for the loan the stock of the borrower in the local association—this stock is held by the local association as security to it on account of its endorsement of the loans made to its borrowing members.

If any of the loans of the borrowing members are in default, or if the land bank sustains a loss on any of the loans made to the members of the local association, the land bank retains the stock of the bank which the local association is required to purchase from the bank and pledge to it when each loan is made to a member of the local association. In other words, to the extent that each borrowing member is required to purchase 5 per cent. of stock in the local association based on the loan secured, the borrower stands security to the bank for the loan advanced by the bank to each member of the local association.

So when Mrs. Shaffer obtained the loan from the bank, she was the owner of the $1,000 worth of stock in the Ascension National Farm Loan Association issued in her name but held by this association (not the land bank) to secure the association on its endorsement of her loan to the bank as well as the endorsement of the loans of the other members of this association to the bank, and the bank held as additional security from the local association besides the mortgage and endorsement of the association, $1,000 worth of its own stock purchased by the association and pledged to the bank.

In 1925, Mrs. Shaffer executed a second mortgage on her plantation to the Whitney Bank to secure a loan of something over $9,000. Being in default on her payments to the land bank, in 1926, Mrs. Shaffer conveyed the plantation to the Whitney Bank for a recited consideration of $10,728.63, consisting of $1,000 paid to her in cash by the Whitney Bank and the remainder consisting in the balance due that bank on the second mortgage and certain taxes paid by it on the plantation. A clause was put in the deed stating specifically that the Whitney Bank did not assume the payment of the balance due on the farm loan, and the following clause was put in the deed: "The vendor, however does hereby declare that she does assign and transfer as a part of the property herein sold any and all claims that she may have against said Federal Farm Loan Bank, or the Farm Loan Association, through which said loan was made, for any amounts due her by said association, or held by said association and creditable upon said indebtedness, said vendor hereby subrogating said Whitney Central Trust and Savings Bank to any and all rights that she may have against said Federal Farm Loan Bank, or said Farm Loan Association."

While the Whitney Bank did not assume the payment of this farm loan, as a matter of fact it continued to pay the installments when they came due, and in 1938 paid the entire balance due on this farm loan, secured the note and had the mortgage cancelled. The Whitney Bank then made demand on the land bank and the local association for the $1,000 which had accrued to the local association for the redemption of the stock held by it in Mrs. Shaffer's name. In the meantime, Mrs. Shaffer had died, and her husband, as her instituted heir, also claimed the $1,000.

The association deposited the amount in court and interpleaded the Whitney Bank and Shaffer. After a hearing, the trial court decided that Shaffer was entitled to the amount and rendered judgment ordering the amount to be paid to him. The Whitney Bank has appealed.

The Whitney Bank claims the proceeds of this stock on two grounds: (1) on account of the transfer and assignment

made to it by Mrs. Shaffer under the clause quoted above; (2) and by reason of subrogation to the rights and privileges of the mortgage creditor—the land bank—under Article 2161 of the Civil Code. We will discuss each of these claims in the order stated.

The stock of Mrs. Shaffer was never transferred to the Whitney Bank. In fact, this stock could not be transferred under the farm loan act unless the Whitney Bank had assumed the mortgage on the property and had become a member of the Ascension National Farm Loan Association. The bank concedes that the stock was never transferred to it, but it claims that under the clause in the deed above quoted, it is entitled to the proceeds of this stock as it acquired all the claims and rights that Mrs. Shaffer had against either the land bank or the local association. The Whitney Bank not only did not have this stock transferred to it, but when, in September, 1937, the association wrote the bank sending a form for the borrower to sign transferring the stock, the bank replied that it would not be interested in having this stock transferred to it. So it is obvious that a short time before the Whitney Bank made the last payment on the farm loan, it claimed no ownership of the stock.

Unless the vendee who acquires the property subject to a farm loan mortgage also secures a transfer of the stock of the borrower in the local association by assuming the mortgage and placing himself in the place of the borrower, he cannot claim the proceeds of the stock when the loan is paid and the stock is redeemed. Brouk v. McKay, Mo.App., 137 S.W.2d 598, 601.

On this feature of the present case, the above-cited case presents a factual situation almost identical with this case. In the cited case, the issue involved was whether or not the original borrower, Johnson, under a farm loan, who had purchased stock in the local farm loan association, was entitled to the proceeds of the stock after the loan had been paid, or whether Mrs. Brouk who had purchased the property through mesne conveyances subject to the land bank mortgage and had paid off the loan was entitled to the proceeds of the stock. We quote a pertinent part of that decision:

"Respondent takes the position that she assumed the payment of the balance of the note held by the land bank, and having assumed the payment of such balance and having thereafter paid it, she became the owner of the proceeds of the stock issued to Johnston. We do not so understand the facts or the law. In the first place she did not assume the payment of Johnston's note, and neither did her predecessors in title, Levinson, Murphy and Berkley. They each took the title subject to a prior incumbrance, to-wit, the land bank deed of trust. It is true that ordinarily a purchaser of real estate may actually assume a mortgage debt without a recital of such assumption in the deed under which he or she takes title, and such assumption of the debt may be established by parole evidence. * * * However, such ruling does not avail respondent here for two reasons, first, the evidence in this case wholly fails to show any assumption of the land bank debt by Mrs. Brouk. On the contrary, her own evidence shows that she at least did not assume the mortgage debt with any thought of that making her the final recipient of the proceeds from the stock certificate, because she frankly says that at the time they bought the land they didn't know anything about such stock; and, second, in any event all those who had any dealings with the transaction were bound to take notice not only of the terms of trust held by the land bank, but of the law under which that loan was made, and the law provided, 12 U.S.C. § 771, subd. 6, 12 U.S.C.A. § 771, subd. 6, that 'in case of the sale of the mortgaged land, the Federal land bank may permit said mortgage and the stock interests of the lendor to be assumed by the purchaser.' Neither Mrs. Brouk nor her predecessors in title back to Murphy and Berkley had ever sought permission of the land bank to assume Johnston's debt, or sought to be made members of the loan association in his stead. And so we are unable to see how any one of them could legitimately claim the proceeds of Johnston's certificate of stock, whether they had attempted without permission to assume payment of his note or not. Johnston had never assigned or transferred his certificate of stock to anyone. Even if Mrs. Brouk had bought and paid for Johnston's stock, with an intention on her part to assume his debt to the land bank and become a member of the loan association, she could not have done so except upon a compliance with the law, which is as much a part of the transaction as if written in the deed of trust. Much less, not

having bought and paid for that stock, could she assume the debt and own the stock without complying with the law. * * *

"In view of the Federal Farm Loan Act as we read it, and the facts in this case, we feel bound to the conclusion that Mrs. Brouk never bargained for and never acquired any right or title to the proceeds of the certificate of stock issued to Johnston by the loan association. It was issued to Johnston who subscribed and paid for it, and he has never assigned or transferred it in any manner, whether actually or by operation of law. The fact that he may have left Jefferson County many years ago, as said in oral argument, without knowing that he was entitled to the proceeds of the stock when the debt was finally paid, could not affect the legal status in any way."

■ The Whitney Bank not only concedes that it did not intend to acquire the stock of Mrs. Shaffer when it took over her mortgaged property, but it also admits that it later indicated that it was not interested in having the stock transferred to it. Nor does the Whitney Bank claim that it acquired this stock by the clause in the deed which we have quoted, but it now contends that this clause is sufficient to transfer and did transfer to it any and all eventual or future interest in the stock or its proceeds that might later accrue to Mrs. Schaffer. We cannot agree with this contention.

The Whitney Bank either got the ownership of the stock, together with all the rights that ownership confers, including the right to collect the proceeds when the stock was redeemed, or else this bank acquired neither the ownership of the stock nor any eventual or future right to collect the proceeds. It must be remembered that the stock remained in the name of Mrs. Shaffer on the records of the association as owner and obviously if any dividends had been declared on the stock she was the one to whom they would have been paid. If it had been the intention of the parties to transfer to the Whitney Bank the right to collect the proceeds of this stock when it was redeemed, it does seem that language would have been employed to indicate that intention. On the contrary, neither the stock nor its proceeds is mentioned as a part of the transfer conveying the land. And if it be conceded that the quoted clause is not clear as to its meaning and that parole evidence should be admitted to explain the meaning of the parties, we have the testimony of a witness who was present when the transfer was made and he says that the stock was not mentioned at all.

■ The other ground on which the Whitney Bank claims the proceeds of this stock is that of a legal subrogation to all the rights and privileges of the land bank under Article 2161 of the Civil Code. In so far as that article might be invoked by the Whitney Bank in claiming a legal subrogation to the mortgage held by the land bank, the first two paragraphs of the article are the only ones that could possibly have any application. The first of these paragraphs provides that subrogation takes place for the benefit of a creditor who pays another creditor whose claim is preferable to his by reason of a prior privilege or mortgage, and the second paragraph provides for the subrogation for the benefit of the purchaser of any immovable property who employs the price of his purchase in paying the creditors to whom the property was mortgaged.

It is contended by Shaffer's counsel, and we think with very good reason, that the Whitney Bank does not come under either of these paragraphs of this article of the Code providing for legal subrogation for the reason that this bank was not and does not claim to have been a creditor of the mortgagor, Mrs. Shaffer, at the time it paid the land bank mortgage, nor does this bank claim that it used any part of the purchase price for the payment of this mortgage on the property which it acquired from Mrs. Shaffer.

On the other hand, counsel for the Whitney Bank cite and rely on the following three cases as holding that where the third possessor of property pays a mortgage on the property in order to protect the property from sale, the third possessor becomes legally subrogated to the rights and privileges of the mortgagee to whom the payment was made; viz, Duchamp v. Dantilly, 9 La.Ann. 247; Walmsley et al. v. Theus et al., 107 La. 417, 31 So. 869; Dennis v. Graham et al., 159 La. 24, 105 So. 87.

We are not certain that the decisions in the cited cases are sufficiently applicable to the facts in this case for us to hold that the Whitney Bank became legally subrogated to all the rights and privileges of the federal land bank when the former bank paid to the latter the balance due on the farm mortgage. We deem it unnecessary to pass on that very questionable point and prefer to rest our decision on other grounds

which we consider more certain and more decisive.

Assuming that legal subrogation did take place in favor of the Whitney Bank to the land bank mortgage, it could have had no greater rights thereunder than the Federal Land Bank itself had. The Federal Land Bank and the Ascension National Farm Loan Association are two separate and distinct corporations. The duty of retiring the stock which Mrs. Shaffer owned in the association rests solely on the Ascension National Farm Loan Association, and the Federal Land Bank is not liable for the redemption of this stock in the association issued by it to Mrs. Shaffer. Lindsey v. Federal Land Bank of Columbia, 186 Ga. 880, 199 S.E. 196. If the Federal Land Bank had foreclosed on its mortgage, sold the property for less than the amount due, and then had obtained a deficiency judgment against Mrs. Shaffer for the difference, the latter could not have set off against this deficiency judgment the stock which she owned in the local association for the reason that the land bank and the local association are separate corporations. Federal Land Bank of Omaha v. Mogck, 66 S.D. 514, 286 N.W. 322; Knox National Farm Loan Association v. Phillips, 300 U.S. 194, 57 S.Ct. 418, 81 L.Ed. 599, 108 A.L.R. 738.

From this relationship of the mortgage creditor, the mortgagor and the local association the rights of the mortgage creditor against the Shaffer stock must be determined. As already stated, the stock was never pledged to nor held by the land bank, but this stock was pledged to and held by the local association, a separate legal entity from the land bank. The land bank held its own stock in the amount of $1,000 pledged to it by the association. This stock which the land bank held in pledge as additional security for the loan was not owned by Mrs. Shaffer, but it was owned by the local association.

Mrs. Shaffer not only had to look to the association for the redemption of her stock, but she could not compel the association to redeem her stock after the loan was paid if there were other unpaid liabilities due the land bank by the association, as it was the association and not the land bank that Mrs. Shaffer's stock was pledged to secure.

It follows that the land bank had no pledge or privilege on this stock and could not have subjected the stock to the payment of the mortgage except by obtaining a judgment against Mrs. Shaffer for her debt and seized the stock in the same manner that it would have seized any other property of hers not covered by the mortgage. So if the Whitney Bank was subrogated to all the rights of the land bank, the former would have no more rights against the stock than the latter. No claim is made, of course, that this stock has been seized under a judgment against Mrs. Shaffer under the mortgage debt.

Finding no error in the judgment appealed from, the same is hereby affirmed at the cost of the appellant.